## AMERICAN POSTAL WORKERS UNION, AFL–CIO, et al., Appellants,

### v.

## UNITED STATES POSTAL SERVICE, et al., Appellees.

### No. 90–5022.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 14, 1991.

Decided August 9, 1991.

---

Diana Ceresi, Arlington, Va., for appellants. Anton G. Hajjar was on the brief Washington, D.C., for appellants. Darryl J. Anderson also entered an appearance, Washington, D.C., for appellants.

Kevin B. Rachel, Atty., U.S. Postal Service, with whom Edward F. Ward, Jr., Asst. Gen. Counsel, U.S. Postal Service, Jay B. Stephens, U.S. Atty., and John D. Bates, R. Craig Lawrence and Charles L. Hall, Asst. U.S. Attys., were on the brief, Washington, D.C., for appellees.

Before RUTH BADER GINSBURG, D.H. GINSBURG and HENDERSON, Circuit Judges.

Opinion for the court filed by Circuit Judge HENDERSON.

HENDERSON, Circuit Judge:

In this action we review the district court's grant of summary judgment to the defendants in a suit challenging the U.S. Postal Service's dismissal of four probationary employees. We hold that the applicable collective bargaining agreement leaves these probationary postal employees with no contractual means of challenging their dismissals and that the Federal Tort Claims Act affords them no right of action for retaliatory dismissal.

## I. BACKGROUND

The appellants, plaintiffs below, are four former probationary postal employees and their union. The four individuals sustained work-related injuries or developed occupational illnesses shortly after they began working for the U.S. Postal Service (USPS or Postal Service) and they filed claims with their employer for compensation under the Federal Employees Compensation Act, 5 U.S.C. §§ 8101 *et seq.* (FECA).[1] After their compensation claims were filed and still within the 90–day probationary period provided in the collective bargaining agreement,[2] all four employees were terminated.

1. The compensation claims of three of the four probationers were paid. Only that of plaintiff Katz was rejected.

2. There are actually two collective bargaining agreements involved in this case because of the times at which the relevant events occurred. One agreement ran from 1981–84 and the other

Article 2 of the collective bargaining agreement prohibits discrimination based on physical handicap.[3] Article 21 provides that employees are covered by the FECA and it requires the USPS to promulgate regulations consistent with the regulations of the Office of Workers Compensation Programs implementing the FECA.[4] In compliance with this portion of the agreement, the USPS issued a regulation prohibiting a postal official to "induce[ ], compel[ ] or direct[ ] an employee to forego filing a claim under FECA." To challenge their dismissals, three of the four probationers filed grievances regarding which they sought arbitration. The arbitrator ruled, however, that the grievances were not arbitrable because the collective bargaining agreement closed the grievance and arbitration procedures to probationary employees challenging their dismissals.

The plaintiffs then filed this lawsuit against the USPS and the United States in the district court. The amended complaint alleged that the USPS had terminated the individual plaintiffs because of their handicaps and in retaliation for their filing of FECA claims. On the defendants' motions, the district court granted summary judgment on all five counts of the complaint. On appeal, the plaintiffs pursue their claims alleging breach of the collective bargaining agreement's nondiscrimination obligation and breach of that portion of the agreement prohibiting the dismissal of employees for filing FECA claims. They also assert that the district court erred in dismissing their claim under the Federal Tort Claims Act (FTCA) for retaliatory dismissal.

## II. BREACH OF CONTRACT CLAIMS

Article 12 of the collective bargaining agreement covering the plaintiff employees

establishes a probationary employment period:

> The probationary period for a new employee shall be ninety calendar days. The Employer shall have the right to separate from its employ any probationary employee at any time during the probationary period and these probationary employees shall not be permitted access to the grievance procedure in relation thereto.

The arbitrator ruled that this clause of the agreement denied the probationers the opportunity to arbitrate their dismissals and they do not question that ruling. Although the appellants concede that the contract excludes them from arbitration, they contend that the contract's nondiscrimination and FECA provisions confer rights on them that they may vindicate in federal court through a suit for breach of the collective bargaining agreement. The appellants contend that their situation is similar to that in *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962). There, the Supreme Court held that, when a collective bargaining agreement permits only employees to initiate arbitration procedures, the employer may sue in federal court for breach of the contract's no-strike clause. *Id.* at 241–43, 82 S.Ct. at 1320–22.

In order to challenge their dismissals by a breach of contract claim, the appellants must first establish that the contract accords them rights that they may vindicate in federal court. In the *Atkinson* collective bargaining agreement, the union had unambiguously "undertak[en] not to strike" so as to give rise to rights the employer could enforce through a suit for breach of contract. *See id.* at 241 & n. 1,

---

from 1984–87. The relevant portions of the two agreements are substantively identical.

3. Article 2 of the agreement states that "there shall be no discrimination ... against employees ... because of a physical handicap with respect to a position the duties of which can be performed efficiently by an individual with such physical handicap without danger to the health or safety of the physically handicapped person or to others."

4. Article 21 states: "Employees covered by this Agreement shall be covered by [the Federal Employees Compensation Act], and any amendments thereto, relating to compensation for work injuries. The Employer will promulgate appropriate regulations which comply with applicable regulations of the Office of Workers Compensation Programs and any amendments thereto."

82 S.Ct. at 1320 & n. 1. Similarly, the appellants must establish that, notwithstanding their probationary status, the contract's nondiscrimination and FECA clauses provide them with contractual rights they may exercise to challenge their dismissals.

The appellants contend the collective bargaining agreement contemplates that, because they may not challenge their dismissals in arbitration, probationary employees will instead do so in federal court. At the very least, they assert, a genuine issue of material fact sufficient to preclude summary judgment exists with respect to the parties' intent on this question. We find the appellants' arguments unpersuasive.

█ It is true that the agreement involved here does not affirmatively state that arbitration is the exclusive means for employees to contest their dismissals. *Cf. Hollins v. Kaiser Found. Hosps.*, 727 F.2d 823, 824 (9th Cir.1984) (probationary employee may not challenge discharge in federal court when grievance procedure is "exclusive method of resolving 'all disputes' "). In light of the language of the contract's probationary employment clause, however, we do not read this omission to imply that the appellants may raise their contract-based claims in federal court. Article 12 of the collective bargaining agreement gives the USPS the broad discretion to "separate from its employ any probationary employee at any time during the probationary period." This language unmistakably denies probationary employees the contractual protections against dismissal that employees enjoy after their first 90 days of service: it permits the USPS to dismiss *"any probationary employee"* regardless of its reason for doing so without breaching the collective bargaining agreement.

It would turn the effect of the probation clause on its head to hold, as the appellants argue, that dismissed probationers are excluded from arbitration but may nonetheless bring suit for breach of contract, taking advantage of the full range of contractual protections available to nonprobationary employees. If we were to accept the appellants' argument, the only differ-ence between probationary and nonprobationary employees would be the forum in which they enforced their rights under the contract: probationary employees would enforce their rights in federal court while nonprobationers would be limited to arbitration. *See American Postal Workers v. USPS*, 789 F.2d 1, 4–5 (D.C.Cir.1986) (under Supreme Court's *Steelworkers Trilogy*, arbitration, when available, is binding and conclusive of employee's claims).

According to the appellants' logic, dismissed probationers could sue not only to enforce the employer's nondiscrimination and FECA obligations; so long as they did so in federal court rather than through arbitration, they could also enforce against the employer the just-cause requirement for dismissals contained in Article 16. Allowing this would undermine the purpose of a probationary employment period—to permit an employer to evaluate a new employee on a trial basis and terminate him for whatever reason it chooses during the trial period of employment.

Because the appellants' interpretation would read the probation clause out of the collective bargaining agreement, we reject their contention that the agreement excludes probationers only from arbitration, permitting them to sue for breach of contract. Probationary postal employees have "no contractual right to continued employment, [and their] discharge cannot be considered a breach of the collective bargaining agreement." *Van Leeuwen v. USPS*, 628 F.2d 1093, 1097 (8th Cir.1980); *see also Sanders v. WMATA*, 819 F.2d 1151, 1158 (D.C.Cir.1987) (probationary employee terminable at will and without access to grievance proceedings has no contractual claim for termination).

In view of our holding that the agreement unambiguously denies to the dismissed probationary employees the right to proceed in court for breach of contract, we necessarily reject the appellants' argument regarding a genuine issue of material fact on the meaning of the contract. They submitted to the district court an affidavit declaring that the union's intent in negotiating the contract was that probationers

could sue for breach of contract. In the absence of ambiguity in the collective bargaining agreement, however, we have no cause to examine extrinsic evidence of the parties' intent. *See, e.g., Operating Eng'rs Pension Trusts v. B & E Backhoe, Inc.*, 911 F.2d 1347, 1352 (9th Cir.1990). The affidavit regarding the parties' intent therefore creates no issue of fact preventing the grant of summary judgment.

### III. FEDERAL TORT CLAIMS ACT CLAIM

■ The appellants next assert the district court erred in dismissing their claims under the FTCA, 28 U.S.C. §§ 1346(b), 2671 *et seq.* Alleging that they were terminated for filing FECA claims, the appellants sought to use the FTCA to bring claims for retaliatory discharge under state retaliatory discharge statutes. The district court dismissed these claims on the ground that the USPS's employment decisions fall under the FTCA's discretionary function exception, 28 U.S.C. § 2680(a). *See American Postal Workers Union v. U.S. Postal Service*, No. 85–2154, slip op. at 46–52 (D.D.C. July 10, 1989). The appellants contest the application of the discretionary function exception here. We do not reach the appellants' arguments regarding the discretionary nature of the USPS's personnel decisions. We hold instead that the FTCA does not provide a basis for the asserted claim for relief.

Chapters 10 and 12 of the Postal Reorganization Act (PRA), 39 U.S.C. §§ 1001–1011, 1201–1209, set out a comprehensive scheme governing employment relations within the Postal Service. The PRA operates largely by incorporating other statutes, including the FECA, *see* 39 U.S.C. § 1005(c), and parts of the Civil Service Reform Act (CSRA). Of specific importance here, the PRA provides that chapter 75 of the CSRA, 5 U.S.C. §§ 7501 *et seq.*, "shall apply to officers and employees of the Postal Service." 39 U.S.C. § 1005(a)(1). Chapter 75 of the CSRA sets up a series of procedural safeguards for covered employees who have suffered adverse personnel actions of the sort involved here. These safeguards include appeal of the termi-

nation decision to the Merit Systems Protection Board, *see* 5 U.S.C. § 7513(d), and review by the United States Court of Appeals for the Federal Circuit. *See id.* §§ 7703(a)(1) & (b)(1). This scheme for review of adverse employment decisions is the type of "narrowly tailored employee compensation scheme" that the Supreme Court has held "pre-empts the more general tort recovery statutes." *See Brown v. General Servs. Admin.*, 425 U.S. 820, 834–35, 96 S.Ct. 1961, 1969, 48 L.Ed.2d 402 (1976). Remedial statutes aimed at specific harms, like the Rehabilitation Act of 1973 and Title VII of the Civil Rights Act of 1964, by their terms supplement the PRA. *See* 29 U.S.C. § 794 (Rehabilitation Act); 42 U.S.C. § 2000e–16(a) (Title VII). A residual statute like the FTCA, however, cannot co-exist with a comprehensive employment relations scheme. The PRA incorporates portions of the CSRA, an "elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations," *Bush v. Lucas*, 462 U.S. 367, 388, 103 S.Ct. 2404, 2417, 76 L.Ed.2d 648 (1983) (CSRA preempts *Bivens* action for retaliatory demotion), and we have no warrant to permit the appellants to use the FTCA as a means of circumventing it.

> [T]he civil service laws carefully prescribe how, when, and by whom the propriety of certain federal termination decisions will be reviewed. Had Congress intended for such decisions to be reviewable in district courts in the context of actions under the Federal Tort Claims Act, it would not have so precisely defined the civil service remedy.

*Premachandra v. United States*, 739 F.2d 392, 394 (8th Cir.1984); *cf. United States v. Demko*, 385 U.S. 149, 152–54, 87 S.Ct. 382, 384–86, 17 L.Ed.2d 258 (1966) (recovery under statute providing specific redress for injury is exclusive remedy and bars FTCA suit).

We realize that much of the CSRA's protection may be unavailable to the appellants because they were terminated so

shortly after beginning work.[5] Moreover, neither the CSRA, the FECA, nor any other part of the PRA affords a cause of action to an employee who claims he was discharged in retaliation for filing a FECA claim. These considerations do not, however, alter our decision. The Supreme Court and several of our sister circuits have held that the exclusion of a class of employees from the protections of the CSRA does not leave these employees "free to pursue whatever judicial remedies [they] would have had before enactment of the CSRA." *United States v. Fausto*, 484 U.S. 439, 447, 108 S.Ct. 668, 673, 98 L.Ed.2d 830 (1988). Rather, such exclusion evinces a "clear congressional intent to deny the excluded employees the protections of Chapter 75—including judicial review—for personnel action covered by that chapter." *Id.*[6] "The CSRA provides an exclusive framework for judicial review of adverse disciplinary actions taken by federal agencies." *Royals v. Tisch*, 864 F.2d 1565, 1568 (11th Cir.1989); *see also Yokum v. USPS*, 877 F.2d 276, 280 (4th Cir.1989); *Witzkoske v. USPS*, 848 F.2d 70, 73 (5th Cir.1988); *Diaz v. USPS*, 853 F.2d 5, 9 (1st Cir.1988) ("CSRA precludes the district court from reviewing the merits of an adverse personnel action taken against one who is not covered by Chapter 75" of CSRA). Accordingly, the probationers failed to state a claim under the FTCA.

## IV.

We note that our holding today—that dismissed probationary postal employees may neither sue for breach of contract nor bring suit under the FTCA—does not mean that the appellants lacked recourse against the handicap discrimination they allege they suffered. If, as the probationers allege, the USPS dismissed them because of handicaps, the USPS violated the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq. See id.* § 794. The Rehabilitation Act provides extensive statutory remedies for handicap discrimination. *See* 29 U.S.C. § 794a. The appellants might also have sought reinstatement before the Merit Systems Protection Board. *See* 39 U.S.C. § 1005(c); 5 U.S.C. § 8151; 5 C.F.R. § 353; *see also Roche v. USPS*, 828 F.2d 1555, 1557 (Fed.Cir.1987). Finally, we note that one of the appellants won reinstatement before the National Labor Relations Board on the ground that his dismissal violated sections 8(a)(1) and 8(a)(3) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1) & (3). *See United States Postal Service*, No. 1–CA–21,628(P) at 12–14 (Aug. 1, 1986).

Because we conclude the district court correctly held that the probationary postal employees possess no contractual right to challenge their dismissals in federal court and that they may not bring suit under the FTCA to challenge their dismissals, the judgment of the district court is

*Affirmed.*

---

**5.** Subchapter II of Chapter 75 of the CSRA, 5 U.S.C. §§ 7511–14, applies only to postal employees who, in addition to meeting other requirements, have "completed 1 year of current continuous service in the same or similar positions." *Id.* § 7511(a)(1)(B).

**6.** We recognize that, in *Fausto*, the Court noted that chapter 75 refers specifically to the class of employees to which the terminated employee belonged and provides for review by the Merit Systems Protection Board and the court as an agency option rather than a statutory entitlement. Here, although probationary employees do not receive protection (optional or otherwise) elsewhere under the statute, we hold that their express exclusion from the remedies of chapter 75 is itself sufficient to indicate that Congress did not intend them to challenge their dismissals by suit in federal district court.