FRATERNAL ORDER OF POLICE, NATIONAL LABOR COUNCIL, USPS NO. 2; Michele Readinger; Edward L. Johnson; Ricardo Rosado; John A. Silvestro; Gary P. Trepiccione; Edgardo Mercado; Peter T. Ficci; Thomas Santiago; Thomas Genovese; Kenneth Ashworth; Anthony Jacodino; Tracy P. Daniels; Elmo Lazzarini, Plaintiffs,

v.

UNITED STATES POSTAL SERVICE, Marvin T. Runyon, in his official capacity as Postmaster General of the United States; Lee Roy Heath; Joyce A. King, James Marrotta; Roy Priolo; Peter Gallante; Aaron Burack; and Paul Mader, in their individual capacities, Defendants.

No. 97 CIV. 1841 DLC.

United States District Court,
S.D. New York.

Dec. 22, 1997.

Stephen G. De Nigris, Law Offices of Stephen G. De Nigris, Washington, D.C., for Plaintiffs.

Mary Jo White, U.S. Atty., New York, NY, Sheila M. Gowan, Asst. U.S. Atty., for Defendants.

*OPINION*

COTE, District Judge.

This action, filed on March 17, 1997, was brought by the Fraternal Order of Police, National Labor Council, United States Postal Service No.2 ("FOP")—a labor organization and the exclusive representative of United States Postal Police Officers [1]—and 13 individual Postal Police Officers. The plaintiffs claim that the defendants, the United States Postal Service ("the Postal Service") and several named individuals employed by the Postal Service, violated the plaintiffs' rights under federal and state law, as well as under the plaintiffs' employment contract. At this stage of the litigation, the defendants have filed a motion to dismiss the complaint or, in the alternative, for summary judgment. For the reasons set forth below, both of the defendants' motions are granted in part and the case is dismissed.

*Background*

The individual plaintiffs in this action, all of whom are represented by the FOP, were, at all times material to this action, employed as Postal Police Officers ("PPOs") at the Bronx General Post Office in New York. PPOs function as security guards for the Postal Service and supplement the efforts of Postal Inspectors, who are the primary law enforcement agents of the Postal Service. Although PPOs carry weapons in carrying out their job duties, the Postal Service contends that PPOs are not authorized to engage in any investigative efforts beyond preliminary fact-finding, and that they generally are not authorized to effect arrests. Their role is essentially one of crime prevention rather than law enforcement. *See* Postal Police Officer Manual IS–702 § 138 (1982).

The plaintiffs in this action challenge the restrictions that the Postal Service has imposed on their law enforcement efforts. They claim that such restrictions place them in personal danger and hamper the Postal Service's overall effectiveness at preventing crime and apprehending criminals. The plaintiffs cite 40 U.S.C. § 318 (1986) ("Section 318"), which authorizes the Administrator of General Services ("GSA") to appoint special police officers and defines the powers that may be entrusted to such officers, as

1. The Court notes at the outset that it is uncontested that the FOP has standing to represent its members in this suit. Unions representing employees of the Postal Service are statutorily authorized to represent their members in suits such as the present action. *See* 39 U.S.C. § 1208(c) (1980).

granting them a statutory entitlement to exercise the full array of powers enumerated in that provision. As will be explained below, the Postal Service has been given the same powers as the GSA has under Section 318 to hire special police. The plaintiffs seek a declaration from this Court of their rights under Section 318; a declaration that they may not be disciplined for actions such as effecting an arrest; and an injunction enjoining the defendants from taking any such disciplinary action. These claims for declaratory and injunctive relief comprise the first count in their complaint.

In the second count, the plaintiffs seek declaratory and injunctive relief, as well as money damages, for alleged violations of their Fourth Amendment rights under the United States Constitution. The plaintiffs claim that their Fourth Amendment rights were violated when, on January 21, 1997, the defendants conducted a warrantless search of their lockers at the Post Office where they work, allegedly to look for weapons unlawfully on the premises. The plaintiffs claim that the defendants did not have a reasonable suspicion or probable cause to believe that the lockers contained illegal matter. In addition, the plaintiffs claim that the search was not conducted in a manner consistent with the requirements contained in the FOP's collective bargaining agreement with the Postal Service, which contemplates locker searches in certain circumstances.

The plaintiffs' third and fourth counts arise under New York law. The third count is identical to the second count, except that it alleges an illegal search under Article 1, Section 12 of the New York Constitution. The fourth count alleges trespass to chattel related to the search of the lockers.

The plaintiffs' fifth count is a breach of contract claim. This count is a slight variation on the second count, in that in it the plaintiffs claim directly that the manner in which the search was conducted violated the terms of their contract. The plaintiffs have

not asked for additional relief related to this claim.

The defendants have argued, as a preliminary matter, that the complaint should be dismissed in its entirety because the Court lacks subject matter jurisdiction. The defendants further argue that the plaintiffs have failed to state a claim upon which relief may be granted with respect to each count. Specifically, in response to the first count of the complaint, the defendants dispute that PPOs are entitled to any particular powers under Section 318. They contend, further, that the Postal Service is statutorily authorized to employ PPOs as it deems necessary and to restrict their powers accordingly.

In response to the second through fifth counts, the defendants contend that the search was reasonable and consistent with the terms of the FOP's contract and, moreover, that the plaintiffs have failed to exhaust internal grievance procedures as required by their contract. The defendants also contend that the statutory scheme of the Postal Reorganization Act of 1970 ("PRA"), codified at Title 39 of the United States Code, precludes a judicial remedy for any of the claims asserted by the plaintiffs. Finally, the defendants argue that the officers who conducted the search enjoy qualified immunity and therefore may not be sued under the circumstances of this case.

The Court will address each of the plaintiffs' claims in turn, analyzing, first, whether the Court has subject matter jurisdiction over each claim and, second, whether the plaintiffs have stated a claim for which relief may be granted.[2]

*Discussion*

### Count I: The Limitations on PPOs' Law Enforcement Authority

 In their complaint, the plaintiffs cite only 28 U.S.C. § 2201, the Declaratory Judgment Act, as a source of the Court's subject matter jurisdiction to decide their

---

**2.** Although the defendants did not move to dismiss Count I on the basis of the plaintiffs' failure to state a claim, the Court is satisfied that the plaintiffs will not be prejudiced by the Court's conversion of the defendants' motion to dismiss

this Count under Rule 12(b)(1) to one under Rule 12(b)(6). In their memorandum opposing the defendants' motion, the plaintiffs fully briefed the issue of whether they had stated a claim for which relief could be granted in Count I.

claims for declaratory and injunctive relief. This section provides, in pertinent part,

> In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration ....

28 U.S.C. § 2201(a) (1994). By its very language, the Declaratory Judgment Act makes clear that a court must have subject matter jurisdiction over a case on some other basis before it may grant declaratory or injunctive relief. *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72, 70 S.Ct. 876, 878–79, 94 L.Ed. 1194 (1950); *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1110 (2d Cir.1997). The Declaratory Judgment Act is not an independent source of federal subject matter jurisdiction.

Were the plaintiffs unable to cite any other statute conferring federal subject matter jurisdiction over their claims under Count I of the complaint, the claim would have to be dismissed under Rule 12(b)(1), Fed.R.Civ.P. Construing the plaintiffs' submissions in the light most favorable to them, however, as is proper on a motion to dismiss, the Court notes that the plaintiffs have cited 39 U.S.C. § 409 in their memorandum of law opposing the defendants' motion as an independent source of subject matter jurisdiction. The Court will therefore treat the complaint as though it were amended to allege this additional basis of subject matter jurisdiction. As will be made clear below, such a liberal reading of the complaint does not in any way prejudice the defendants.

■ 39 U.S.C. § 409 provides, in pertinent part, that

> the United States district courts shall have original but not exclusive jurisdiction over all actions brought by or against the Postal Service. Any action brought in a State court to which the Postal Service is a party may be removed to the appropriate United States district court ....

39 U.S.C. § 409(a) (1980). Since the plaintiffs' claims are brought against the Postal Service, and are not excluded by any other provisions of the statute from the district court's jurisdiction—*see* 39 U.S.C. § 409(c) (excluding from the district court's jurisdiction claims against the Postal Service sounding in tort)—the Court is satisfied that this statute does provide subject matter jurisdiction for the Court to consider whether the plaintiffs have stated a cause of action against at least one of the defendants, the Postal Service, regarding the restrictions on PPOs' law enforcement authority. *See Kerin v. United States Postal Service*, 116 F.3d 988, 990 n. 1 (2d Cir.1997) (acknowledging that 39 U.S.C. § 409(a) "gives the federal courts, concurrently with the state courts, jurisdiction over suits by or against the Postal Service"); *Long Island Trust Co. v. United States Postal Service*, 647 F.2d 336, 338 n. 1 (2d Cir.1981) (same).

Having found subject matter jurisdiction, the Court turns to the question of whether the plaintiffs have stated a cause of action for which relief may be granted with respect to their claims under Count I. Section 318, on which the plaintiffs rely as the source of their right to engage in full law enforcement efforts, provides:

> The Administrator of General Services or officials of *the General Services Administration* duly authorized by him *may appoint uniformed guards of said Administration as special policemen* without additional compensation for duty in connection with the policing of public buildings and other areas under the jurisdiction of the Administrator of General Services. *Such special policemen shall have the same powers as sheriffs and constables upon such Federal property to enforce the laws* enacted for the protection of persons and property, and to prevent breaches of the peace, to suppress affrays or unlawful assemblies, and to enforce any rules and regulations made and promulgated by the Administrator or such duly authorized officials of the General Services Administration for the property under their jurisdiction: Provided, That the jurisdiction and policing powers of such special policemen shall not extend to the service of civil process and shall be restricted to Federal property over which the United States has

acquired exclusive or concurrent criminal jurisdiction.

40 U.S.C. § 318 (emphasis supplied). There is nothing in the language of the statute, however, conferring a private cause of action on special policemen hired pursuant to its grant of authority.

■ Where a statute is silent as to whether it creates a private right of action, a court must apply the factors established in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), to determine whether such a right may be implied. The central focus of such an inquiry is Congressional intent. If it may not fairly be inferred that Congress intended to create a private remedy, then there is no such remedy under the statute. *See Chan v. City of New York*, 1 F.3d 96, 101 (2d Cir. 1993) ("Whether an implied private right of action exists under a federal statute is strictly a matter of congressional intent .").

■ The *Cort v. Ash* factors are as follows:

First, is the plaintiff one of the class for whose especial benefit the statute was enacted—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (internal citations omitted). Applying these factors, the Court finds that the first through third factors weigh heavily in favor of a finding that the statute confers no private right of action on PPOs.

■ First, there is no indication that the statute was enacted for the especial benefit of the police officers who would be hired pursuant to it. Enacted in 1948, Section 318 gave the Administrator of General Services the authority to hire uniformed guards to police public buildings and other GSA-owned areas. As the Seventh Circuit found in the context of an action brought by GSA guards, the purpose of Section 318 was "to enable the GSA to discharge its duty to the public and to the government to protect federal property... [not to] impose a duty on the [government] for the benefit of the guards." *Jarecki v. United States*, 590 F.2d 670, 675 (7th Cir.) (holding that the plaintiff guards lacked standing under Section 318 to seek an order against the GSA), *cert. denied*, 444 U.S. 829, 100 S.Ct. 55, 62 L.Ed.2d 37 (1979).

The powers granted under Section 318 to GSA have also been conferred on the Postal Service. In 1973, Congress provided appropriations for the Postal Service to pay for uniformed guards. *See* Treasury, Postal Service and General Appropriations Act of 1973, Pub.L. 92–351, reprinted in 1972 U.S.C.C.A.N. 563–564. The Act appropriating such funds further provided that the guards employed by the Postal Service would have the same powers as GSA guards hired pursuant to Section 318, and that the Postmaster General would have the same powers that had been granted to the Administrator of General Services to issue rules for the protection of the federal property under his control. *Id.* The powers to issue protective rules which were incorporated by reference in the 1973 Appropriations Act appear at 40 U.S.C. § 318(a) and (b). Section 318(a) provides, in pertinent part:

The Administrator of General Services or officials of the General Services Administration duly authorized by him are authorized to make all needful rules and regulations for the government of the Federal property under their charge and control ...

40 U.S.C. § 318(a) (1986). Section 318(b) provides, in pertinent part:

[T]he Administrator of General Services or officials of the Administration duly authorized by him are authorized to detail any such special policemen for the protection of such property and if he deems it desirable, to extend to such property the applicability of any such regulations and to enforce the same as set forth herein ....

40 U.S.C. § 318(b) (1986).

Congress's appropriation of funds to the Postal Service to hire uniformed guards was

consistent with the PRA, which *inter alia,* specifically authorized the Postal Service to hire security guards whose duties would include the enforcement of rules to protect the safety of property, mail, and persons on postal premises. *See* 39 U.S.C. § 1201(2) (1980). As the Supreme Court has stated, Congress's wish in enacting the PRA—which removed the Postal Service from the Executive Branch and made it an independent entity—was for "the Postal Service to be run more like a business than had its predecessor, the Post Office Department." *Franchise Tax Board of California v. United States Postal Service,* 467 U.S. 512, 519–20, 104 S.Ct. 2549, 2553–54, 81 L.Ed.2d 446 (1984). As indicated in the House Report accompanying the PRA, Congress hoped to

> Eliminate serious handicaps that are now imposed on the postal service by certain legislative, budgetary, financial, and personnel policies that are outmoded, unnecessary, and inconsistent with the modern management and business practices that must be available if the American public is to enjoy efficient and economical postal service.

H.R.Rep. No. 91–1104 (1970), reprinted in 1970 U.S.C.C.A.N. 3649, 3650.

In light of the legislative histories of Section 318 and the PRA, which demonstrate that their purposes were, respectively, to promote the security and efficiency of government operations, the plaintiffs' claim that Section 318 was enacted for their special benefit must fail.

Turning to the second and third parts of the *Cort* test, I find that the same legislative histories support a finding that no private right of action for special police officers was intended by Congress, and that such a private remedy would be inconsistent with the purposes of the PRA and Section 318. Conferring a private right of action on security guards hired pursuant to these statutes would *undermine,* rather than be consistent with, the ability of the Administrator of General Services and the Postmaster General to deploy security personnel as needed for the efficiency and security of government operations.

That the Administrator of General Services and the Postmaster General, as noted above, are explicitly granted the authority to "make all needful rules and regulations for the government of the property under their control," 40 U.S.C. § 318(a), further supports the conclusion that the private right of action urged by the plaintiffs would be incompatible with the overall design of the statutory regime which authorized the plaintiffs' hiring in the first place. In the face of such overwhelming evidence that Congress did not intend to create a private right of action for special police officers under Section 318 or the PRA, the fact that the fourth *Cort* factor weighs in the plaintiffs' favor—because the Postal Service has always been a matter of federal concern—does not in and of itself support an inference that such a right exists. *See California v. Sierra Club,* 451 U.S. 287, 298, 101 S.Ct. 1775, 1781, 68 L.Ed.2d 101 (1981). The claims which the plaintiffs bring in reliance on Section 318 must therefore be dismissed. Other courts that have considered whether other portions of the PRA confer a private right of action on postal employees have reached similar conclusions. *See, e.g., Stupy v. United States Postal Service,* 951 F.2d 1079, 1081–82 (9th Cir.1991) (finding that section of PRA regarding employee eligibility for promotions did not confer a private right of action); *Kaiser v. United States Postal Service,* 908 F.2d 47, 51 (6th Cir.1990) (same); *Blaze v. Payne,* 819 F.2d 128, 129 (5th Cir.1987)(no general private right of action under portions of PRA directing Postal Service to establish personnel management procedures).[3]

## Count II: The Search of the Lockers

█ Turning to the second count in the complaint, concerning the search of the plaintiffs' lockers, I find that 39 U.S.C. § 409(a) provides subject matter jurisdiction for the Court to consider these claims against the

---

**3.** Even if the plaintiffs had a private right of action under Section 318, their claims under Count I would have to be dismissed on account of the plaintiffs' failure to exhaust the remedies provided by their collective bargaining agreement. The necessity of such exhaustion is set out in detail below.

Postal Service, as it did with respect to the claims regarding Section 318.

Nevertheless, the plaintiffs' claims under Count 2 must be dismissed on account of the plaintiffs' failure to exhaust the administrative remedies available to them under the PRA and their collective bargaining agreement with the Postal Service. *See Vaca v. Sipes,* 386 U.S. 171, 184, 87 S.Ct. 903, 913, 17 L.Ed.2d 842 (1967); *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 652, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965); *King v. New York Telephone Co.,* 785 F.2d 31, 33–34 (2d Cir. 1986). The Court is unpersuaded by the plaintiffs' argument that the grievance and arbitration procedures established in their collective bargaining agreement are not the sole remedies available to them for resolution of disputes with the Postal Service. Similarly, the Court is unpersuaded by the plaintiffs' argument that—even if those internal remedies are their sole remedies—they should be excused from exhausting such remedies because the defendants have repudiated the collective-bargaining process and, therefore, the filing of any additional grievances would be futile.[4] Each of these arguments will be addressed in turn.

### Remedies Under the PRA

As the D.C. Circuit noted in *American Postal Workers v. United States Postal Service,* 940 F.2d 704 (D.C.Cir.1991):

> Chapters 10 and 12 of the Postal Reorganization Act (PRA), 39 U.S.C. §§ 1001–10011, 1201–1209, set out a comprehensive scheme governing employment relations within the Postal Service.

*American Postal Workers,* 940 F.2d at 708. The PRA explicitly protects the right of postal workers to organize and authorizes the Postal Service to enter into collective bargaining agreements. *See* 39 U.S.C.

§§ 1209(c), 1203(a) (1980). The PRA also specifically authorizes the Postal Service and the unions representing postal workers to devise internal procedures for the settlement of labor disputes, "including procedures culminating in binding third-party arbitration . . . ." 39 U.S.C. § 1206(b) (1980). It gives the National Labor Relations Board ("NLRB") the authority to supervise collective bargaining units within the Postal Service, 39 U.S.C. §§ 1202 –1203 (1980), and generally incorporates all provisions of the National Labor Relations Act ("NLRA"), codified at 29 U.S.C. § 151 *et seq.* (1973), concerning relations between labor and management. *See* 39 U.S.C. § 1209(a) (1980). The foregoing provisions are consistent with the PRA's overall purpose of enabling the Postal Service to function more like a private sector enterprise than a government agency. *See* H.R.Rep. No. 91–1104 (1970), reprinted in 1970 U.S.C.C.A.N. 3649, 3662 ("Generally speaking, [the PRA] would bring postal labor relations within the same structure that exists for nationwide enterprises in the private sector").

39 U.S.C. Section 1208(a) (1980) provides federal subject matter jurisdiction for actions against by the Postal Service brought by the NLRB, to the same extent that the district courts have subject matter jurisdiction over such claims brought against private sector employers. Noting the PRA's explicit incorporation of the NRLA, courts considering claims against the Postal Service have applied the same limitations to such claims that apply to claims brought against private sector employers. Namely, claimants must first exhaust the remedies available to them under their employment contracts before seeking review in federal court, unless their claim falls into one of several carved-out exceptions.[5] *See, e.g., Stupy,* 951 F.2d 1079, 1083

---

**4.** The defendants correctly point out that the plaintiffs' repudiation argument appears nowhere in their complaint. Nevertheless, in the interests of reaching the merits of this claim, the Court will treat the complaint as though it were amended to include such allegations.

**5.** These exceptions include claims for discrimination brought under Title VII of the Civil Rights Act of 1964 or the Rehabilitation Act of 1973, or for alleged failure to pay adequate wages under the Fair Labor Standards Act of 1938. These

particular statutes are "aimed at specific harms [and] by their terms supplement the PRA." *American Postal Workers Union v. United States Postal Service,* 940 F.2d 704, 708 (D.C.Cir.1991). *See* 29 U.S.C. § 794 (1997 Supp.) (Rehabilitation Act); 42 U.S.C. § 2000e-16 (1994) (Title VII); and 29 U.S.C. § 203(e)(2)(B) (1978) (Fair Labor Standards Act). There are no similar statutes expressly providing a cause of action, independent of internal remedies, for the claims asserted in this case.

(9th Cir.1991); *Kaiser,* 908 F.2d 47, 49. *Cf. Lofton v. United States Postal Service,* 592 F.Supp. 36, 38 (S.D.N.Y.1984) (finding that Postal Service employee could only sue where Union had breached its duty of fair representation). In light of the foregoing, I find that the plaintiffs in this action are limited to the remedies available to them under the terms of their collective bargaining agreement with the Postal Service, and that they must exhaust their remedies under that agreement before they may seek judicial review.[6]

## Remedies Under the FOP's Collective Bargaining Agreement

The collective bargaining agreement ("CBA") entered into by the parties in this action, pursuant to Section 1206(b) of the PRA,[7] sets forth procedures for the internal resolution of grievances. Section 15 of the CBA provides, *inter alia,*:

> A grievance is defined as a dispute, difference, disagreement or complaint between the parties related to wages, hours, and conditions of employment within the terms and provisions of this Agreement. When a PPO covered by the terms of this Agreement or the Union believes that the Employer has violated the terms of this Agreement and that by reason of such violation the PPO's or the Union's rights arising out of this Agreement has been adversely affected, *the PPO or the Union shall be required to follow the procedure set forth below in presenting the grievance.*

Agreement between United States Postal Service and Fraternal Order of Police, National Labor Council, USPS No. 2 (1994–1997) at 53 (emphasis added).

The parties agree that the plaintiffs' complaint regarding the search of their lockers is among those disputes for which the CBA provides a grievance procedure. Nonetheless, the plaintiffs contend that, because the CBA does not state explicitly that the procedures established therein are exclusive, participation in the procedures is elective. This argument in unpersuasive. *See American Postal Workers,* 940 F.2d 704, 707. Although "[i]t is true that the agreement involved here does not affirmatively state that arbitration is the exclusive means for employees" to air their grievances, *id.,* it would make no sense to construe the internal grievance provision as strictly voluntary. If employees could file suit in federal court without exhausting the remedies established in their collective bargaining agreement, there would be little incentive to pursue those remedies at all. The Court therefore concludes that the very presence of the internal grievance provision in the Agreement—even though it is not written in terms clearly stating its exclusive nature—suggests that the plaintiffs must first exhaust those remedies.

## Plaintiffs' Excuse for Failure to Exhaust

The plaintiffs do not contest that they have failed to exhaust the remedies provided under their collective bargaining agreement.[8] Instead, they argue that, if the Court should

---

**6.** The Court similarly concludes that the plaintiffs' remedies against the individual defendants are limited to those provided under the PRA and their collective bargaining agreement. The same factors that counsel against implying an additional remedy against the Postal Service, outside of the comprehensive labor relations scheme established by the PRA, counsel against implying an independent *Bivens*-type remedy against the individual defendants. *See Bush v. Lucas,* 462 U.S. 367, 374–80, 390, 103 S.Ct. 2404, 2409–13, 2417, 76 L.Ed.2d 648 (1983).

**7.** Section 1206(b) provides, in its entirety:

> Collective-bargaining agreements between the Postal Service and bargaining representatives recognized under Section 1203 may include any procedures for resolution by the parties of grievances and adverse actions arising under

the agreement, including procedures culminating in binding third-party arbitration, or the parties may adopt any such procedures by mutual agreement in the event of a dispute. 39 U.S.C. § 1206(b) (1980).

**8.** With respect to the January 21, 1997, search of the plaintiffs' lockers, the FOP filed a grievance on January 30, 1997, in accordance with the parties' collective bargaining agreement. The FOP styled the January 30 grievance as an addendum to earlier complaints it had filed regarding the Postal Service's policy of searching lockers. The grievance acknowledges that "since the investigation is ongoing, other violations may be alleged, as information is uncovered." There has been no representation by either the FOP or the Postal Service that the investigation of the FOP's January 30, 1997, grievance has been completed.

find that the internal remedies are exclusive, their failure to exhaust should be excused. The plaintiffs argue that "the Defendants have repudiated the collective-bargaining process and the filing of any additional grievances would be futile." In support of their contention that the defendants have repudiated the collective-bargaining process, the plaintiffs have submitted affidavits by two PPOs, Michele Readinger and C. John Pesa. Readinger is an area representative for the FOP who has been involved at the national level in labor-management relations, grievance sessions, and arbitration proceedings. Pesa has been her assistant. In their affidavits, both PPOs attest that the Postal Service has engaged in "delaying tactics in an ongoing effort to avoid settling cases." Both PPOs note that Michael J. Harrison, the Labor Relations Specialist at the Postal Service who has represented the Postal Service at negotiation sessions, "purposely and calculatingly slowed the pace of hearings" such that little business could be accomplished at each one. Readinger and Pesa further allege that the Postal Service generally stalled grievances by failing to produce information and documentation necessary to the processing of the grievances and failing to produce written rules which PPOs were accused of violating. In their brief, the plaintiffs have also cited the findings of fact of

> an independent factfinder, [who] in reviewing the actions of the postal service, concluded that the postal service engaged in systemic delays of the grievance process. Appalled by that Postal Service's repudiation, the factfinder stressed that an accelerated processing was appropriate to resolve the extensive backlog of grievances.

Although the plaintiffs have not submitted the findings of fact to which they refer, it is evident from the context in which the reference appears that the plaintiffs refer to the findings issued on August 2, 1994, by the committee chaired by Phyllis E. Florman.[9] That committee of three individuals was designated as a factfinding panel pursuant to provisions in the PRA, codified at 39 U.S.C. § 1207(b) (1980), which provide for such pan-

els in the event of an unresolvable labor dispute.

The defendants deny that they have repudiated the collective-bargaining process. They have submitted evidence of the Postal Service's efforts to accelerate the processing of grievances, which the Postal Service admits have become backlogged. The defendants have submitted a Memorandum of Understanding entered into by the FOP and the Postal Service on October 12, 1994, which provides for pilot grievance and expedited arbitration procedures to handle the backlog of grievances. They have also submitted the affidavit of Michael Harrison, attesting to 20 days of meetings between the FOP and the Postal Service which were held pursuant to the Memorandum of Understanding, in addition to 45 meetings which were held from February through June 1997 to discuss current grievances. Finally, the defendants have produced the August 2, 1994, findings of fact by the Florman committee.

The Florman committee did not, as the plaintiffs allege, conclude that the Postal Service had engaged in delay. Instead, the pertinent portion of the committee's report notes:

> Both parties claim to deplore the current and substantial backlog of unresolved grievances. The Union maintains that the Postal Service is deliberately dragging its feet both in the processing of grievances and in the providing of grievance-related information the Union legitimately has requested. The Factfinding Panel recommends the inclusion of mutual, balanced penalties upon both parties for failing to meet grievance procedure time limits.

Thus, the committee did not conclude, as the plaintiffs have represented, that "the Postal Service engaged in systemic delays of the grievance process," nor was the committee "appalled by the Postal Service's repudiation." Indeed, the report issued by the committee does not express any view whatsoever as to whether one party was more responsible than the other for the delays. The plain-

---

**9.** Within one sentence of citing the report of the unidentified independent factfinder, the plaintiffs cite to the Affidavit of John Pesa. Pesa's affidavit clearly refers to the hearings chaired by Florman and her findings of fact.

tiffs, therefore, may not rely on the report as support for their argument that the Postal Service repudiated the collective bargaining process.

Employees may, in certain circumstances, be excused from exhausting their remedies under their collective bargaining agreement if they can demonstrate that "the conduct of the employer amounts to a repudiation of those contractual procedures." *Vaca*, 386 U.S. at 185,·87 S.Ct. at 914. As the Supreme Court ·has held, "[i]n such a situation ... the employer is estopped by his own conduct to rely on the unexhausted grievance and arbitration procedures as a defense to the employee's cause of action." *Id.* Nevertheless, in light of the strong governmental interest in promoting the enforcement of collective bargaining contracts, *see Drake Bakeries v. Bakery Workers,* 370 U.S. 254, 263, 82 S.Ct. 1346, 1351, 8 L.Ed.2d 474 (1962), the standard for establishing repudiation is very high. The party seeking judicial review must do more than merely assert that the other party to its contract has repudiated the agreement. Even where a party ceases to perform its obligations under a contract— and is unjustified in doing so—such nonperformance does not *per se* amount to a repudiation. *Id.* at n. 6, quoting 6 Corbin, Contracts § 1443 (1961 Supp., n. 34, pp. 192– 193). *Cf. Chesapeake and Potomac Telephone Co. v. National Labor Relations Board,* 687 F.2d 633, 638 (2d Cir.1982); *Abrams v. Carrier Corp.,* 434 F.2d 1234, 1246–47 (2d Cir.1970).

Here, the evidence submitted by the plaintiffs in opposing the defendants' motion does not raise an issue of material fact that the defendants have repudiated their contract with the plaintiffs nor its grievance procedures.[10] *See* Rule 56(c), Fed.R.Civ.P.; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317,

323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The plaintiffs have also failed to raise an issue of fact that pursuing the grievance procedures provided by their contract would be futile. *Compare Glover v. St. Louis–San Francisco Ry. Co.,* 393 U.S. 324, 330–31, 89 S.Ct. 548, 551–52, 21 L.Ed.2d 519 (1969); *cf. Bovers v. Flying Tiger Line Inc.,* 979 F.2d 291, 299 (2d Cir.1992). Indeed, in the only case relied upon by the plaintiffs in support of their contention that the defendants have repudiated the grievance procedures, the court found that the employer-defendant had consistently maintained that the plaintiff was not covered by the collective bargaining agreement. *See Cabarga Cruz v. Fundacion Educativa Ana G. Mendez,* 822 F.2d 188, 192 (1st Cir.1987).

In the present action, all of the evidence indicates that the defendants have never ceased to participate in the grievance procedures established by their collective bargaining agreement with the FOP, and, moreover, that they have made efforts to improve the procedures' efficacy. In light of the undisputed evidence of the defendants' continuous engagement in the grievance procedures established by the CBA, summary judgment is proper dismissing the plaintiffs' claims under Count II on account of the plaintiffs' failure to exhaust internal remedies.

For the same reasons outlined above, summary judgment dismissing the plaintiffs' claims under Count III through V of the complaint is also proper. The plaintiffs may not seek judicial review of their state tort or breach of contract claims against the defendants without having first exhausted their internal remedies.

*Conclusion*

For the reasons set forth above, the defendants' motion to dismiss the plaintiffs' complaint or, in the alternative, for summary judgment, is granted. The Clerk of Court

---

**10.** The Court herein treats the parties' submissions as a motion for summary judgment by the defendants with respect to the issue of the plaintiffs' failure to exhaust internal remedies. The plaintiffs have not opposed the defendants' conversion of their motion to dismiss into a motion for summary judgment, and have submitted their own evidence outside of the pleadings—namely

the affidavits of Readinger and Pesa—in opposition to the motion. As already noted, the plaintiffs have requested leave to amend their complaint to add the repudiation theory. The Court has assumed for the purposes of this analysis that the factual allegations in the plaintiffs' motion papers were also part of their pleadings.

shall enter judgment for the defendants and close the case.

ʻSO ORDERED.