**O'BRIEN v. PABST SALES CO.**

**No. 9892.**

Circuit Court of Appeals, Fifth Circuit.

Dec. 4, 1941.

Rehearing Denied Jan. 2, 1942.

R. G. Storey, of Dallas, Tex., for appellant.

Alex F. Weisberg, of Dallas, Tex., and Edward S. Rogers and William T. Woodson, both of Chicago, Ill., for appellee.

Before FOSTER, HUTCHESON, and HOLMES, Circuit Judges.

HUTCHESON, Circuit Judge.

Plaintiff, in physique as in prowess as a hurler, a modern David, is a famous football player. Defendant, in bulk, if not in brass and vulnerability, a modern Goliath, is a distributor of Pabst beer. Plaintiff, among other honors received during the year 1938, was picked by Grantland Rice on his Collier's All American Football Team. Defendant, as a part of its advertising publicity for 1939, following its custom of getting out football schedule calendars, placed an order with the Inland Lithographing Company, to prepare for and furnish to it, 35,000 Pabst 1939 football calendars. The calendars were to carry complete schedules of all major college games; professional schedules; and pictures of Grantland Rice's 1938 All American Football Team, the Inland Company to furnish photographs and necessary releases.

At the top of the calendar, as thus printed and circulated, were the words "Pabst Blue Ribbon." Directly underneath were the words "Football Calendar, 1939"; to the left of these words was a photograph of O'Brien in football uniform characteristically poised for the throw; to the right of them was a glass having on it the words "Pabst Breweries, Blue Ribbon Export Beer"; and to the right of the glass still, a bottle of beer, having on it "Pabst Blue Ribbon Beer." Directly below these was the intercollegiate football schedule for 1939, and in the center of the calender were pictures, including that of O'Brien, of Grantland Rice's All American Football Team for 1938. Near the bottom was the schedule of the national football league and on the very bottom margin, were the words "Pabst Famous Blue Ribbon Beer."

Claiming that this use of his photograph as part of defendant's advertising was an invasion of his right of privacy and that he had been damaged thereby, plaintiff brought this suit.

The defenses were three. The first was that if the mere use of one's picture in truthful and respectable advertising would be an actionable invasion of privacy in the case of a private person, the use here was not, as to plaintiff, such an invasion, for as a result of his activities and prowess in football, his chosen field, and their nationwide and deliberate publicizing with his consent and in his interest, he was no longer, as to them, a private but a public person, and as to their additional publication he had no right of privacy. The second defense was that plaintiff, in his own interest and that of Texas Christian University, had posed for and had authorized the publicity department of T. C. U. to distribute his picture and biographical data to newspapers, magazines, sports journals and the public generally, and that the particular picture whose use is complained of had been in due course obtained from and payment for it had been made to the T. C. U. publicity department. Third, no injury to appellant's person, property or reputation had been or could be shown and there was therefore no basis for a recovery. The testimony fully supported these defenses. It showed that plaintiff, then 23 years old, had been playing football for 14 years, four years of that time with Texas Christian University, and two with the Philadelphia Eagles, a professional football team. During that period he had received many and distinguished trophies and honors as an outstanding player of the game. He had in fact been the recipient of practically every worthwhile football trophy and recognition, being picked by Grantland Rice on his Collier's All American Football Team, and by Liberty on their All Players All American Team, and many other so-called All American Football Teams. Plaintiff testified that he had not given permission to use his picture, indeed had not known of the calendar until some time after its publication and circulation; that he was a member of the Allied Youth of America,

the main theme of which was the doing away with alcohol among young people; that he had had opportunities to sell his endorsement for beer and alcoholic beverages and had refused it; and that he was greatly embarrassed and humiliated when he saw the calendar and realized that his face and name was associated with publicity for the sale of beer. But he did not, nor did anyone for him, testify to a single fact which would show that he had suffered pecuniary damage in any amount. In addition, on cross-examination he testified; that he had repeatedly posed for photographs for use in publicizing himself and the T. C. U. football team; that Mr. Ridings, director of publicity and news service of T. C. U. without obtaining particular, but with his general, approval and consent, had furnished numberless photographs to various people, periodicals and magazines; and that the pictures of those composing Grantland Rice's All American Football Team which appeared on the calendar, including his own picture, were first publicized in Collier's magazine, a magazine of widest circulation.

On defendants' part, it was shown that following the instructions given by the defendant, the calendar company had written to the T. C. U. Director [1] of publicity for, and obtained from him, the photograph for use in the calendar, paying him $1 therefor, and that the photograph had been used in the belief that the necessary consent to do so had been obtained. The proof that plaintiff had posed for many football pictures for the publicity department of T. C. U. for the purpose of having them widely circulated over the United States was overwhelming and uncontradicted. Mr. Riding, director of publicity, testified that Davey O'Brien was perhaps the most publicized football player of the year 1938–39; that it was the function of his office to permit and increase the publicity of football players; that his office had furnished some 800 photographs of plaintiff to sports editors, magazines, etc.; that if anybody made a request for a picture of O'Brien he would ordinarily grant the request without asking what they were going to do with it; that the picture in the upper left hand corner of the calendar is a very popular picture of O'Brien and perhaps his most famous pose, and that the publicity department had general authority to furnish plaintiff's pictures for publicity purposes but had never knowingly furnished any for use in commercial advertising except with O'Brien's consent and approval.

At the conclusion of this evidence, it being apparent that the picture had been obtained from one having real or apparent authority to furnish it, that no right of privacy of O'Brien's had been violated by the mere publishing of his picture and that if any actionable wrong had been done him, it must be found in the fact that the publication impliedly declared that O'Brien was endorsing or recommending the use of Pabst beer, plaintiff's contention centered around this point.

The District Judge agreed with defendant that no case had been made out. He was of the opinion: that considered from the standpoint merely of an invasion of plaintiff's right of privacy, no case was made out, because plaintiff was an outstanding national football figure and had completely publicized his name and his pictures. He was of the opinion too, that considered from the point of view that the calendar damaged him because it falsely, though only impliedly, represented that plaintiff was a user of, or was commending the use of, Pabst beer, no case was made out because nothing in the calendar or football schedule could be reasonably so construed; every fact in it was truthfully stated and there was no representation or suggestion of any kind that O'Brien or any of the other football celebrities whose pictures it showed were beer drinkers or were recommending its drinking to others; the business of making and selling beer is a legitimate and eminently respectable business and people of all walks and views in life, without injury to or reflection upon themselves, drink it, and that any association of O'Brien's picture with a glass of beer could

---

[1] "Director of Publicity, Texas Christian University, Fort Worth, Texas.

"Dear Sir: We would like to secure an 8 x 10 action picture of David O'Brien one showing him throwing a football similar to the one enclosed of Sammy Baugh. This is to be used on our 1939 schedule of football games.

"Send invoice with picture and we will remit by return mail.

"Thanking you for your cooperation, we remain,

"Very truly yours,
"B. E. Callahan,
"Publisher."

not possibly disgrace or reflect upon or cause him damage. He directed a verdict for defendant.

Plaintiff is here urging that the judgment be reversed and the cause remanded for a new trial, first because as a matter of law plaintiff showed damage in that his name was used for the commercial purpose of advertising beer, and second, because there was an issue of fact as to whether the calendar reasonably conveyed to the public the false impression that plaintiff was a user of and was endorsing or recommending the use of beer. We cannot agree with appellant. We think it perfectly plain that the District Judge was right both in the view he took that nothing in the publication violated plaintiff's right of privacy and that nothing in it could be legitimately or reasonably construed as falsely stating that he used, endorsed, or recommended the use of Pabst's beer.

Assuming then, what is by no means clear, that an action for right of privacy would lie in Texas at the suit of a private person, we think it clear that the action fails; because plaintiff is not such a person and the publicity he got was only that which he had been constantly seeking and receiving; and because the use of the photograph was by permission, and there were no statements or representations made in connection with it, which were or could be either false, erroneous or damaging to plaintiff. Nothing in the majority opinion purports to deal with or express an opinion on the matter dealt with in the dissenting opinion, the right of a person to recover on quantum meruit, for the use of his name for advertising purposes. That was not the case pleaded and attempted to be brought. The case was not for the value of plaintiff's name in advertising a product but for damages by way of injury to him in using his name in advertising beer. Throughout the pleadings, the record and the brief, plaintiff has uniformly taken the position that he is not suing for the reasonable value of his endorsement of beer, on the contrary, the whole burden of his pleading and brief is the repeated asseveration, that he would not and did not endorse beer, and the complaint is that he was damaged by the invasion of his privacy

in so using his picture as to create the impression that he was endorsing beer.

The judgment was right. It is affirmed.

HOLMES, Circuit Judge (dissenting).

There is no Texas statute or decision directly in point, but I think, under the Texas common law, the appellant is entitled to recover the reasonable value of the use in trade and commerce of his picture for advertisement purposes, to the extent that such use was appropriated by appellee.

The State of Texas, early in its history,[1] adopted the common law of England, so far as it was not inconsistent with its constitution and laws, and provided that such common law, together with such constitution and laws, should be the rule of decision and continue in force until altered or repealed by the legislature.[2]

The right of privacy is distinct from the right to use one's name or picture for purposes of commercial advertisement. The latter is a property right that belongs to every one; it may have much or little, or only a nominal, value; but it is a personal right, which may not be violated with impunity.

The great property rights created by the demands of modern methods of advertising are of comparatively recent origin, and may not have been in existence in January, 1840, but the common law of Texas is subject to growth and adaptation in the land of its adoption, as well as it was in the country of its origin.[3] The capacity of the common law of Texas "to draw inspiration from every fountain of justice" has not been diminished by time, though a century has passed since its adoption by the legislature of that state.[4]

No one can doubt that commercial advertisers customarily pay for the right to use the name and likeness of a person who has become famous. The evidence in this case shows that appellant refused an offer by a New York beer company of $400 for an endorsement of its beer, and the appellee apparently recognized that it was necessary to obtain the consent of the various football players, because it required that releases be obtained from them. This admittedly was not done. The fact

---

1 Act of January 20, 1840, Laws of Republic 1840, p. 3.

2 Revised Civil Statutes of Texas of 1925, Art. 1; Grigsby v. Reib, 105 Tex. 597, 153 S W. 1124, L.R.A.1915E, 1 Ann. Cas.1915C, 1101; Great S. Life Ins. Co. v. Austin, 112 Tex. 1, 243 S.W. 778.

3 Cf. Funk v. United States, 290 U.S. 371, 383, 54 S.Ct. 212, 78 L.Ed. 369.

4 Cf. Hurtado v. California, 110 U.S. 516, 530, 4 S.Ct. 111, 292, 28 L.Ed. 232.

that appellant made this stipulation with the publishers of the calendars may save it from the infliction of punitive damages, but cannot relieve it from the payment of actual damages measured by the value of the unauthorized use of appellant's picture.

Texas statutes or decisions (if there were any) might make easier the task before us, but the absence thereof does not relieve us of the duty of finding and declaring the governing law of Texas and the forty other states of the Union in which a tort is alleged to have been committed by appellee in the use of appellant's picture for the purpose of advertising beer. If in any of those forty-one states a tort was committed as alleged, the amount of damages proximately resulting therefrom should have been submitted to the jury.

The decision of the majority leaves the appellant without remedy for any non-libellous use made of his picture by advertisers of beer, wine, whiskey, patent medicines, or other non-contraband goods, wares, and merchandise. It also places every other famous stage, screen, and athletic star in the same situation.[5] If one is popular and permits publicity to be given to one's talent and accomplishment in any art or sport, commercial advertisers may seize upon such popularity to increase their sales of any lawful article without compensation of any kind for such commercial use of one's name and fame. This is contrary to usage and custom among advertisers in the marts of trade. They are undoubtedly in the habit of buying the right to use one's name or picture to create demand and good will for their merchandise.[6] It is the peculiar excellence of the common law that, by general usage, it is shaped and moulded into new and useful forms.

Appellant's pleadings allege facts that entitle him to recover for either a violation of his right of property or right of privacy, and because the court does not think he is entitled to recover for the latter does not relieve us of the duty of deciding whether or not any right of property was violated. He alleges that he has never given any person, firm, or corporation any right or permission to use or display his picture in the way it was used, and alleges further that its use by the appellee was in wanton disregard of "the rights or privacy of this plaintiff."

The facts out of which the law of this case arises were alleged in the complaint. It appears therefrom that the appellee committed a tort in misappropriating a valuable property right of appellant. Even if forms of action were not abolished, the appellant might seek damages for the tort or waive the tort and sue upon an implied promise to pay the reasonable value of the right appropriated. Appellant has not sought the wrong relief. He was not required to plead the law (ordinarily it is improper to do so); he was only required to state the ultimate facts upon which he relied for relief. If a litigant pleads the wrong law, it is the court's duty nevertheless to apply the correct law to the facts of the case. This was true even before the new rules, and it is doubly true since their adoption. The plaintiff's attorneys did not err in seeking alternative relief.

Unless the judgment of the court below is modified so as to dismiss this action without prejudice, there can be no doubt that, if appellant brings another suit, he will be met with a plea of res judicata, which will probably be sustained; but, if not sustained, appellant would be put to great and unnecessary expense and court costs merely because of a mistake as to the special character of the legal wrong done him by the appellant. One who sues for damages for a tort does not endorse or condone the wrong, regardless of the form in which he may seek damages therefor.

Because a peremptory instruction was given to the jury to find for the defendant, I respectfully dissent from the opinion of the majority upholding the judgment of the district court.

---

[5] Sergeant York is a nationally famous person, but no one would argue that his name or picture might be used commercially without his consent. Such an argument would be reductio ad absurdum.

[6] Illustrative of the value of the use of one's picture for advertising purposes, Gene Tunney says:

"While I was training for my second fight with Jack Dempsey I was offered $15,000 to endorse a certain brand of cigarettes. I didn't want to be rude, so, in declining, I merely said I didn't smoke. Next day the advertising man came back with another offer: $12,000 if I would let my picture be used with the statement that 'Stinkies must be good, because all my friends smoke them.' " (This offer was also refused.) Reader's Digest for December, 1941, page 23.

172

### On Petition for Rehearing.

PER CURIAM. As neither of the judges who concurred in the judgment of the court in the above numbered and entitled cause is of the opinion that the petition for rehearing should be granted, it is ordered that said petition be and the same is hereby denied.