**JOE DICKERSON & ASSOCIATES, LLC, a Colorado limited liability corporation; and Joe H. Dickerson, individually, Petitioners,**

v.

**Rosanne Marie (Brock) DITTMAR, Respondent.**

**No. 00SC115.**

Supreme Court of Colorado, En Banc.

Nov. 19, 2001.

Harris, Karstaedt, Jamison & Powers, P.C., A. Peter Gregory, Michael Brice Sullivan, Englewood, CO, Attorneys for Petitioners.

Richard J. Lesch, Denver, CO, Attorney for Respondent.

Justice BENDER delivered the Opinion of the Court.

## I. INTRODUCTION

This appeal involves the tort of invasion of privacy by appropriation of another's name or likeness. The defendant published an article in a newsletter, identifying the plaintiff by name and including her picture, which detailed his investigation of the plaintiff's theft of bearer bonds and her subsequent criminal conviction. The plaintiff sued the defendant claiming that her privacy was invaded by appropriation of her name and likeness.

Ruling on the defendant's motion for summary judgment, the trial court held that even if the tort were cognizable in Colorado, the plaintiff's appropriation claim failed because she presented no evidence that her name or likeness had any value.

On appeal, the court of appeals reversed on other grounds. *Dittmar v. Dickerson & Assocs.*, 9 P.3d 1145, 1147 (Colo.App.1999). That court, after finding this tort cognizable, ruled that there were genuine issues of material fact regarding other aspects of the tort, including the purpose of the publication and whether the use of the name and likeness had value to the defendant. We agree that the tort is cognizable in Colorado. However, we reverse the court of appeals' holding because the defendant's use of the plaintiff's name and likeness in the context of an article related to her crime and conviction is newsworthy and, therefore, privileged.

We hold that the tort of invasion of privacy by appropriation of another's name or likeness is cognizable under Colorado law. The elements of this tort are: (1) the defendant used the plaintiff's name or likeness; (2) the use of the plaintiff's name or likeness was for the defendant's own purposes or benefit, commercially or otherwise; (3) the plaintiff suffered damages; and (4) the defendant caused the damages incurred. A plaintiff's claim of invasion of privacy by appropriation of her name and likeness will not succeed, however, if the defendant's use of the plaintiff's name and likeness is privileged under the First Amendment. In this case, the defendant is entitled to summary judgment as a matter of law because we find that the defendant's use of the plaintiff's name and likeness in the context of an article about the plaintiff's crime and felony conviction is a matter of legitimate public concern and is, therefore, privileged. Hence, we reverse the court of appeals and return this case to that court with directions to reinstate the trial court's order granting summary judgment to the defendant.

## II. FACTS AND PROCEEDINGS BELOW

Defendants Joe Dickerson & Associates, LLC and Joe Dickerson were hired during a child custody dispute to investigate plaintiff Rosanne Marie (Brock) Dittmar. During the course of this investigation, Dickerson noticed inconsistencies in the way Dittmar came to possess certain bearer bonds. He reported the results of his investigation to authorities. Thereafter, Dittmar was charged with and convicted of felony theft of these bonds.

Dickerson publishes a newsletter called "The Dickerson Report," which is sent free of charge to law enforcement agencies, financial institutions, law firms, and others. This report contains articles about financial fraud investigations, tips for avoiding fraud, activities of private investigator boards, information about upcoming conferences, and the like. Dickerson ran a series of articles in the report under the heading "Fraud DuJour."

This column included such articles as "Fraud DuJour—Wireless Cable Investments," "Fraud DuJour—Prime Bank Instruments," and the article at issue here, "Fraud—DuJour Five Cases, 100%+ Recovery."

In this article, Dickerson related the role his firm played in five cases in recovering 100%—and in one case more than 100%—of the value of stolen assets. Dittmar's case was discussed first. Dickerson's article detailed how Dittmar, who worked as a secretary at a brokerage firm, stole a customer's bearer bonds from her place of employment and cashed them for personal use. In addition, the article described Dickerson's investigation of Dittmar, the fact that the jury convicted Dittmar of theft, and how the court ordered her to pay restitution to the theft victim.[1] This article appears on the front page of The Dickerson Report, mentions Dittmar by name, and includes her photograph.

Dittmar sued Dickerson on a number of tort theories including defamation, outrageous conduct, and invasion of privacy by appropriation of another's name or likeness. The trial court granted summary judgment for Dickerson on all claims. With respect to Dittmar's claim for invasion of privacy by appropriation of another's name or likeness, the only claim relevant to this appeal, the trial court noted that Colorado has not explicitly recognized this tort. The trial court granted Dickerson's motion for summary judgment because, even assuming the tort was cognizable under Colorado law, Dittmar "present[ed] no evidence that her name or likeness had any value." The trial court noted that, under the definition of the tort in the Second Restatement of Torts, appropriation requires more than mere publication of the plaintiff's name or likeness:

> The value of a plaintiff's name is not appropriated by mere mention of it, or by reference to it in connection with legitimate mention of his public activities; nor is the value of his likeness appropriated when it is published for purposes other than taking advantage of his reputation, prestige, or other value associated with him, for purposes of publicity.

Restatement (Second) of Torts § 652C, cmt. d (1976).

Dittmar appealed the trial court's dismissal of her appropriation claim. The court of appeals agreed with the trial court that this tort requires the defendant to appropriate certain values associated with the plaintiff's name or likeness: "In order for liability to exist, the defendant must have appropriated to his or her own use or benefit the reputation, prestige, social or commercial standing, public interest or other values of the plaintiff's name or likeness." *Dittmar*, 9 P.3d at 1146 (citing Restatement (Second) of Torts § 652C, cmt. c). The court of appeals concluded, however, that the plaintiff raised issues of material fact regarding different aspects of the tort, namely the purpose of the publication and whether the use benefited Dickerson. *Id.* at 1147. These issues of fact, the court of appeals reasoned, precluded summary judgment in favor of Dickerson.

1. In full, the portion of the article about Dittmar states:

> Roseanne Marie Brock was the Secretary/Administrative Assistant to Art Obermeier, Manager of the Jesup Josephthal securities brokerage firm in Denver, Colorado. A retired elementary school teacher went to Jesup Josephthal to pick up several bearer bonds that had been purchased by her elderly sister who was in the hospital dying of cancer. When she returned to her home, she did not have the bonds in her possession. She never found the bearer bonds.
>
> Joe Dickerson & Associates, LLC was retained in an unrelated matter to conduct a civil investigation concerning Ms. Brock. During that investigation it was learned that Brock had the bonds and had opened a checking account with the coupons she had clipped.
>
> She later cashed the bonds through a broker friend in Boulder, Colorado, (who did not check to see if they were stolen) and used most of the proceeds for the down payment on a home titled in the name of her boyfriend who lived with her and her children.
>
> Brock claimed in a sworn statement the bonds were given to her by the now deceased client of Jesup Josephthal as a gift to her daughter. She claimed she called the lady and thanked her for the bonds. Dickerson's investigation revealed the lady had been dead three days when Brock allegedly called her. Dickerson contacted the heir of the deceased victim who confirmed the loss of the bonds.
>
> It took the Boulder County Jury less than ten minutes to convict Brock of theft. The court ordered 100% restitution to the estate of the victim. Her heir has now been made whole.

Hence, that court reversed the trial court's grant of summary judgment. *Id.* at 1148.

Dickerson petitioned this court for certiorari on three issues: (1) whether the tort of invasion of privacy based on appropriation of another's name or likeness is cognizable under Colorado law; (2) if so, whether an appropriation claim requires evidence that the plaintiff's name has an exploitable value; and (3) whether the article constituted constitutionally protected speech.[2]

We agree with the court of appeals' recognition of this tort but we disagree that a plaintiff must provide evidence of the value of her name and likeness when she seeks only personal damages. Because we find that the defendant's publication of the plaintiff's name and likeness in the context of an article about her crime and felony conviction is privileged under the First Amendment, we hold that the defendant is entitled to summary judgment as a matter of law.

## III. ANALYSIS

### A. Overview of the Appropriation Tort

In 1890, an influential law review article outlined the contours of the tort of invasion of privacy. Samuel D. Warren & Louis D. Brandeis, *The Right To Privacy*, 4 Harv. L.Rev. 193 (1890). Warren and Brandeis suggested that increased abuses by the press required a remedy that would protect private individuals from mental distress and anguish. *Id.* at 195–96. They proposed that the right of privacy would protect a person's rights in their appearance, sayings, acts, and personal relations. *Id.* at 213. To Warren and Brandeis, the right of privacy did not involve property so much as the "more general immunity of the person—the right to one's personality." *Id.* at 200–01 & 207. In short, they desired to protect the individual's right "to be let alone." *Id.* at 205.

Over the years, almost every state has recognized, either statutorily or by case law, that one way that an individual's privacy can be invaded is when a defendant appropriates a plaintiff's name or likeness for that defendant's own benefit.[3] While the exact parameters of this tort of invasion of privacy by appropriation of identity vary from state to state, it has always been clear that a plaintiff could recover for personal injuries such as mental anguish and injured feelings resulting from an appropriation. *See, e.g., Reed v. Real Detective Publ'g Co.*, 63 Ariz. 294, 162 P.2d 133, 139 (1945); *Fairfield v. Am. Photocopy Equip. Co.*, 138 Cal.App.2d 82, 291 P.2d 194, 197 (1955); *Annerino v. Dell Publ'g Co.*, 17 Ill.App.2d 205, 149 N.E.2d 761, 762 (1958); J. Thomas McCarthy, *The Rights of Publicity and Privacy*, § 1:7 (2d ed.2000).

There has been a great deal of debate, however, over the ability of a plaintiff to recover for pecuniary loss resulting from an unauthorized commercial exploitation of her name or likeness. Courts initially had difficulty reconciling how a celebrity, well-known to the public, could recover under the misleading heading of "privacy." *See, e.g., O'Brien v. Pabst Sales Co.*, 124 F.2d 167, 170 (5th Cir.1941); *Pallas v. Crowley–Milner & Co.*, 334 Mich. 282, 54 N.W.2d 595, 597 (1952). Such plaintiffs often sought damages for commercial injury that resulted when defendants used plaintiffs' identities in advertising. McCarthy, *supra*, § 1:7.

Therefore, in the context of pecuniary damages, some courts and commentators have resorted by analogy to property law and have recognized a "right of publicity" which permits plaintiffs to recover for injury to the commercial value of their identities. *See, e.g., Haelan Labs., Inc. v. Topps Chewing Gum, Inc.*, 202 F.2d 866, 868 (2d Cir.1953)

**2.** The precise issues on which we granted certiorari are:

1. Whether the tort of invasion of privacy through appropriation of another's name or likeness is cognizable under Colorado law.
2. Whether a claim for appropriation of name or likeness can be sustained where there is no evidence of an exploitable value to respondent's name or likeness.
3. Whether, under the circumstances, petitioners' communications were protected under

the First Amendment to the United States Constitution.

**3.** The most common type of appropriation occurs when a defendant uses a plaintiff's identity for commercial, advertising purposes without the plaintiff's permission. However, other cases have arisen, such as when a defendant impersonates a plaintiff in order to obtain credit or secret information or when a defendant poses as plaintiff's wife. *See* William L. Prosser, *Privacy*, 48 Cal. L.Rev. 383, 403 (1960).

("We think that, in addition to and independent of that right of privacy ... a man has a right in the publicity value of his photograph, i.e., the right to grant the exclusive privilege of publishing his picture.... For it is common knowledge that many prominent persons ... far from having their feelings bruised through public exposure of their likenesses, would feel sorely deprived if they no longer received money for authorizing advertisements ...."); *see also* Melville B. Nimmer, *The Right of Publicity,* 19 Law & Contemp. Probs. 203, 203–04 (1954).

In a seminal law review article, William Prosser described invasion of privacy as a complex of four related torts: (1) unreasonable intrusion upon the seclusion of another; (2) publicity that places another in a false light before the public; (3) public disclosure of embarrassing private facts about another; and (4) appropriation of another's name or likeness. Prosser, *supra,* at 389. The first three of these four torts protect only personal interests. *Id.* at 406. But, perhaps in response to the simmering legal debate about the scope of the protection afforded by the appropriation tort, Prosser defined the appropriation tort as protective of both personal and economic interests. In doing so, Prosser emphasized the proprietary nature of the appropriation tort without removing it from the framework of privacy: "The interest protected is not so much a mental as a proprietary one, in the exclusive use of the plaintiff's name and likeness as an aspect of his identity." *Id.*

Thus, Prosser's formulation of the appropriation tort subsumed the two types of injuries—personal and commercial—into one cause of action that existed under the misleading label of "privacy." The privacy label is misleading both because the interest protected (name and/or likeness) is not "private" in the same way as the interests protected by other areas of privacy law and because the appropriation tort often applies to protect well-known "public" persons. Despite these problems, Prosser's view of the appropriation tort was ultimately incorporated into the Second Restatement of Torts. Restatement (Second) of Torts § 652C.

Prosser's emphasis on the property-like aspects of the tort has led to a great deal of confusion in the law of privacy. *See* McCar-

thy, *supra,* §§ 1:23 & 5:59. Some courts have partially rejected the Prosser formulation, choosing to distinguish claims for injury to personal feelings caused by an unauthorized use of a plaintiff's identity ("right of privacy") from claims seeking redress for pecuniary damages caused by an appropriation of the commercial value of the identity ("right of publicity"). *See, e.g., Carson v. Here's Johnny Portable Toilets, Inc.,* 698 F.2d 831, 834–35 (6th Cir.1983); *PETA v. Bobby Berosini, Ltd.,* 111 Nev. 615, 895 P.2d 1269, 1283–84 (1995) ("We consider it critical in deciding this case that recognition be given to the difference between the *personal,* injured-feelings quality involved in the appropriation privacy tort and the *property,* commercial value quality involved in the right of publicity tort." (emphasis in original)); *State ex rel. Elvis Presley Int'l Mem'l Found. v. Crowell,* 733 S.W.2d 89, 94–95 (Tenn.App.1987). Thus, in those jurisdictions, the right of publicity is viewed as an independent doctrine distinct from the right of privacy. This view finds support in the Third Restatement of Unfair Competition, which recognizes that the right of publicity protects against commercial injury, while the right of privacy appropriation tort protects against personal injury. Restatement (Third) of Unfair Competition § 46, cmts. a & b (1995).

Some jurisdictions attempt to follow Prosser's formulation of the tort and provide relief for both personal and commercial harm through a single common law or statutory cause of action. *See, e.g., Ainsworth v. Century Supply Co.,* 295 Ill.App.3d 644, 230 Ill. Dec. 381, 693 N.E.2d 510, 514 (1998); *Candebat v. Flanagan,* 487 So.2d 207, 212 (Miss. 1986).

In other states, however, the parameters or even the existence of the appropriation tort remain undetermined. Such is the case in Colorado.

## B. Colorado's Recognition of the Appropriation Tort

A brief review of the development of the tort of invasion of privacy in Colorado demonstrates that recognition of the appropria-

tion tort is a natural outgrowth of our earlier precedent.

We have recognized that invasion of privacy is a cognizable tort under Colorado law. *Rugg v. McCarty,* 173 Colo. 170, 175, 476 P.2d 753, 755 (1970). In *Rugg,* we held that a plaintiff may assert a claim for invasion of privacy where a creditor unreasonably attempts collection of a debt in a manner that will foreseeably result in extreme mental anguish and embarrassment to the debtor. *Id.* at 176, 476 P.2d at 755. In reaching this decision, we relied both on a Colorado statute that protected a privacy right [4] and the fact that a majority of jurisdictions had recognized the tort of invasion of privacy. *Id.* at 175, 476 P.2d at 755. We did not, however, "attempt to comprehensively define the right of privacy, nor to categorize the character of all invasions which may constitute a violation of such right." *Id.*

Recently, we recognized the tort of invasion of privacy by unreasonable publicity given to another's private life. *Ozer v. Borquez,* 940 P.2d 371, 377 (Colo.1997). As in *Rugg,* we relied upon the fact that a majority of jurisdictions have recognized this tort. *Id.*

Similarly, the tort of invasion of privacy by appropriation of a plaintiff's name or likeness has been recognized throughout most of the United States, either statutorily or through the common law. *Staruski v. Cont'l Tel. Co.,* 154 Vt. 568, 581 A.2d 266, 268 (1990) (stating that almost all states have recognized the tort). Further, neither the plaintiff nor the defendant in this case disputes that such a tort is cognizable in Colorado. We now hold that Colorado recognizes the tort of invasion of privacy by appropriation of an individual's name or likeness.

## C. Elements of the Tort

Having recognized that the invasion of privacy by appropriation of name or likeness tort is recognized in Colorado, we now consider the elements of this tort.

■ The Second Restatement of Torts articulates the tort of appropriation of another's name or likeness, stating: "One who

appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy." Restatement (Second) of Torts § 652C. The Colorado Civil Jury Instructions divide the tort into five distinct elements: (1) the defendant used the plaintiff's name or likeness; (2) the defendant sought to take advantage of the plaintiff's reputation, prestige, social or commercial standing, or any other value attached to the plaintiff's name, likeness, or identity; (3) the use of the plaintiff's name or likeness was for the defendant's own purposes or benefit, commercially or otherwise; (4) damages; and (5) causation. CJI–Civ. 4th 28:4 (2000).

The dispute in this case centers around the second element listed above, that defendant must appropriate "the reputation, prestige, social or commercial standing, or other value associated with the plaintiff's name or likeness." The defendant, Dickerson, argues that summary judgment in his favor is appropriate because the plaintiff, Dittmar, has presented no evidence that her name and likeness had any value.

The Colorado Civil Jury Instructions were developed from the comments to section 652C of the Second Restatement of Torts. Comment c implies that one element that a plaintiff must prove is that the plaintiff's identity has value, stating that "the defendant must have appropriated to his own use or benefit the reputation, prestige, social or commercial standing, public interest or other values of the plaintiff's name or likeness." Restatement (Second) of Torts § 652C, cmt. c. Based on this and other comments to section 652C, some courts that follow the Restatement have explicitly required that one element of the tort is that the plaintiff's identity must have had pre-existing commercial value. *See, e.g., Reeves v. Fox Television Network,* 983 F.Supp. 703, 710 (N.D.Ohio 1997) (granting summary judgment to defendant under Ohio law because plaintiff's name and likeness had no "intrinsic value"); *Fogel v. Forbes, Inc.,* 500 F.Supp. 1081, 1088 (E.D.Pa.1980) (applying Pennsylvania law);

4. "Right of privacy—right of civil action. There exists in the state of Colorado a right of privacy, an invasion of which may be compensated by damages." § 40–4–33(1)(a), 3 C.R.S. (1963).

This statute, which related to wiretapping crimes, was repealed, effective July 1, 1972. *See* ch. 121, sec. 1 and 4, 1971 Colo. Sess. Laws 388, 388 and 490.

*Schifano v. Greene County Greyhound Park, Inc.,* 624 So.2d 178, 181 (Ala.1993) (holding that there "is no unique quality or value in the [plaintiffs'] likeness that would result in commercial profit to the [defendant]"); *Cox v. Hatch,* 761 P.2d 556, 564 (Utah 1988).

However, as discussed above, the Restatement takes a property-oriented approach to the law of appropriation, an approach not wholly embraced in all jurisdictions. In the context of damages intended to remedy a proprietary injury to the plaintiff's commercial interests, it may make sense to require a plaintiff to prove the value of her identity, either as part of her proof of damages or as an element of the tort. This does not necessarily mean that the value of the plaintiff's identity is relevant when the plaintiff seeks damages only for her mental anguish.

It appears illogical to require the plaintiff to prove that her identity has value in order for her to recover for her personal damages. The market value of the plaintiff's identity is unrelated to the question of whether she suffered mental anguish as a result of the alleged wrongful appropriation. A plaintiff whose identity had no commercial value might still experience mental anguish based on an unauthorized use of her name and likeness. Of the numerous cases that have considered the tort of invasion of privacy by appropriation of the plaintiff's name or likeness, few have suggested that there is any requirement that the plaintiff prove the value of her identity as a prerequisite to recovery for mental suffering.[5] Rather, a more typical summary of the law is found in *Motschenbacher v. R.J. Reynolds Tobacco Co.,* where the 9th Circuit attempted to reconcile the relationship between commercial damages, mental anguish damages, and the requirement of value, stating:

> It is true that the injury suffered from an appropriation of the attributes of one's identity may be "mental and subjective"— in the nature of humiliation, embarrassment and outrage. However, where the identity appropriated has a commercial

value, the injury may be largely, or even wholly, of an economic or material nature. 498 F.2d 821, 824 (9th Cir.1974) (applying California law, citations and footnotes omitted).

■ Consistent with this approach, we decline to include the second element of value, as described by the Colorado Civil Jury Instructions, as a required element of the tort. Hence, we hold that the elements of an invasion of privacy by appropriation claim are: (1) the defendant used the plaintiff's name or likeness; (2) the use of the plaintiff's name or likeness was for the defendant's own purposes or benefit, commercially or otherwise; (3) the plaintiff suffered damages; and (4) the defendant caused the damages incurred.

■ Applying these elements in this case, we conclude that Dittmar, the plaintiff, alleged sufficient facts to satisfy each of the required elements. We do not require the plaintiff, who seeks only personal damages, to prove the value of her identity. Thus, her failure to do so is not fatal to her claim.

We note that the plaintiff does not seek commercial damages. Hence, we do not reach the question of whether Colorado permits recovery for commercial damages under either the rubric of privacy or under the right of publicity, or the question of whether the plaintiff must prove the value of her identity when she seeks commercial damages.

Thus, we hold that the trial court erred by granting summary judgment to the defendant on the grounds that the plaintiff failed to provide evidence of the value of her name or likeness.

### D. Newsworthiness Privilege

Having defined the elements of the tort of invasion of privacy by appropriation of name or likeness, we now consider the defendant's argument that the trial court properly granted summary judgment in his favor because his publication of the plaintiff's name and

---

**5.** We also note that in the cases that suggest that the plaintiff must prove the pre-existing value of her identity, it is often unclear whether the plaintiffs sought personal damages, commercial damages, or both. *See, e.g., Reeves v. Fox Television*

*Network,* 983 F.Supp. 703 (N.D.Ohio 1997); *Fogel v. Forbes, Inc.,* 500 F.Supp. 1081 (E.D.Pa. 1980); *Schifano v. Greene County Greyhound Park, Inc.,* 624 So.2d 178 (Ala.1993); *Cox v. Hatch,* 761 P.2d 556 (Utah 1988).

picture was constitutionally protected speech as a matter of law. We note, as discussed below, that our review is de novo because this is a question of law.

Dickerson, the defendant, argues that his article relates to a matter of legitimate public concern and that, therefore, it is constitutionally protected speech. The plaintiff agrees that the circumstances surrounding her arrest and conviction are newsworthy and of legitimate public concern. She does not object to the fact that a local newspaper wrote articles regarding her crime, arrest, trial, and conviction, or that these articles identified her by name. Instead, she argues that the defendant's republication of these same facts in his newsletter, in conjunction with her name and picture, constitutes an invasion of her privacy. She characterizes Dickerson's newsletter as an "infomercial" that is "designed to promote Dickerson's private investigation firm and to attract business for the firm." Hence, she argues that the character of the defendant's article is primarily commercial and that it should not receive the protection of the First Amendment. Under the particular facts of this case, we disagree with the plaintiff's argument.

■ In the context of invasion of privacy by appropriation of name and likeness, there is a First Amendment privilege that permits the use of a plaintiff's name or likeness when that use is made in the context of, and reasonably relates to, a publication concerning a matter that is newsworthy or of legitimate public concern. *See, e.g., Lane v. Random House, Inc.*, 985 F.Supp. 141, 146 (D.D.C. 1995); *Eastwood v. Superior Court*, 149 Cal. App.3d 409, 421, 198 Cal.Rptr. 342 (1983) ("Publication of matters in the public interest, which rests on the right of the public to know, and the freedom of the press to tell it, cannot ordinarily be actionable."); *Haskell v. Stauffer Communications, Inc.*, 26 Kan. App.2d 541, 990 P.2d 163, 166 (1999) ("If a communication is about a matter of public interest and there is a real relationship between the plaintiff and the subject matter of the publication, the matter is privileged."). This privilege exists because dissemination of information regarding matters of public concern is necessary for the maintenance of an informed public. *Pierson v. News Group*

*Publ'ns, Inc.*, 549 F.Supp. 635, 639 (S.D.Ga. 1982).

In many situations, however, it is not altogether clear whether a particular use of a person's name or likeness is made for the purpose of communicating news or for the purpose of marketing a product or service. After all, many advertisements incorporate factual information as part of their sales message. *See* McCarthy, *supra*, § 8:16 ("[A]s every marketer knows, the best way to sell is to slip the message 'buy me' in between informing and entertaining the prospective customer. Thus, almost all 'advertising' both entertains and informs.").

■ To resolve this question, courts must determine whether the character of the publication is primarily noncommercial, in which case the privilege will apply, or primarily commercial, in which case the privilege will not apply. *See Tellado v. Time-Life Books, Inc.*, 643 F.Supp. 904, 909–10 (D.N.J.1986) (applying New Jersey law) ("[D]efendant would be liable for the tort of misappropriation of likeness only if defendant's use of plaintiff's likeness was for a predominantly commercial purpose.... The use must be mainly for purposes of trade, without a redeeming public interest, news, or historical value."); McCarthy, *supra*, § 8:13. Under this test, an article that has commercial undertones may still be protected if it concerns a legitimate matter of public concern. *See, e.g., Ault v. Hustler Magazine, Inc.*, 860 F.2d 877, 883 (9th Cir.1988). The question of whether a use of plaintiff's identity is primarily commercial or noncommercial is ordinarily decided as a question of law. *Lee v. Penthouse Int'l, Ltd.*, No. CV96–7069SVW, 1997 U.S. Dist. LEXIS 23893, at *11 n. 2 (C.D.Cal. March 20, 1997); *Tellado*, 643 F.Supp. at 910; *Haskell*, 990 P.2d at 166–67.

Because the defendant's article has aspects of both commercial and noncommercial speech, we must determine which type of speech predominates. The facts of this case are unusual. We have found no precedent where a convicted felon has brought a tort claim of wrongful appropriation of her identity based upon the defendant's republication of truthful information about her conviction.

To determine whether the defendant's use of the plaintiff's name and likeness was for a primarily commercial or noncommercial purpose, we must first define "commercial speech." Commercial speech is speech that proposes a commercial transaction. *City of Cincinnati v. Discovery Network, Inc.,* 507 U.S. 410, 422–23, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993). It is the content of the speech, not the motivation of the speaker, which determines whether particular speech is commercial. *Id.* (criticizing the use of speaker motivation to determine whether speech is commercial); *Bd. of Trustees of the State Univ. of New York v. Fox,* 492 U.S. 469, 482, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989).

A profit motive does not transform a publication regarding a legitimate matter of public concern into commercial speech. *Id.* ("Some of our most valued forms of fully protected speech are uttered for a profit."). Many news publishers, including newspapers and magazines, are motivated by their desire to make a profit. Courts have repeatedly held that, in order to be actionable, the use of a plaintiff's identity must be more directly commercial than simply being printed in a periodical that operates for profit. *See, e.g., Haskell,* 990 P.2d at 166 ("The cases uniformly apply the newsworthiness privilege to matters published by the media even though they are published to make a profit."). A contrary rule would preclude the publication of much news and other matters of legitimate public concern.

Applying the above principles to the instant case, we conclude that the defendant's publication was primarily noncommercial because it related to a matter of public concern, namely the facts of the plaintiff's crime and felony conviction. The defendant's article detailed how the plaintiff, who worked as a secretary at a brokerage firm, stole a customer's bearer bonds from her place of employment and cashed them for personal use. In addition, the article described the defendant's investigation of the plaintiff, the fact that the jury convicted the plaintiff of theft, and how the court ordered her to pay restitution to the theft victim. There can be no question that these details about the plaintiff's crime and conviction are matters of legitimate public concern. In *Cox Broad-casting Corp. v. Cohn,* 420 U.S. 469, 492, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975), the United States Supreme Court stated, "The commission of crime, prosecutions resulting from it, and judicial proceedings arising from the prosecutions . . . are without question events of legitimate concern to the public." In the context of a discussion of the plaintiff's crime and felony conviction, which are legitimate matters of public concern, the use of her name and picture cannot be described as a primarily commercial usage of her identity.

The fact that the defendant's article did not appear in a traditional newspaper does not change this result. We have previously stated that "[i]t is . . . well established that freedom of the press is not confined to newspapers or periodicals, but is a right of wide import and 'in its historic connotation comprehends every sort of publication which affords a vehicle of information and opinion.' " *In re Hearings Concerning Canon 35 of the Canons of Judicial Ethics,* 132 Colo. 591, 593, 296 P.2d 465, 467 (1956) (citing *Lovell v. City of Griffin,* 303 U.S. 444, 452, 58 S.Ct. 666, 82 L.Ed. 949 (1938)). This means that if the contents of an article are newsworthy when published by a local newspaper, then they do not cease to be newsworthy when subsequently communicated by a different sort of publisher.

Further, the fact that the defendant's reason for publishing the newspaper may have been his own commercial benefit does not necessarily render the speech "commercial." As noted above, a magazine or newspaper article is protected despite the fact that a publisher may publish a particular article in order to make a profit. Similarly, the defendant's speech is protected even if he intends it to result in profit to him, so long as the contents of the speech qualify for protection.

The defendant's profit motive does not affect the fact that the article relates to the arrest and circumstances of a felony conviction, which are matters of legitimate public concern. Therefore, we conclude that the defendant's publication was predominately a noncommercial publication. We hold that the publication of a plaintiff's name and likeness in connection with a truthful article regarding the plaintiff's felony conviction is privileged. As such, the plaintiff's claim of

invasion of privacy by appropriation of name or likeness cannot prevail.

## IV.   CONCLUSION

Since the defendant's use of the plaintiff's name and picture is privileged under the First Amendment, we reverse the court of appeals and return this case to that court with directions to reinstate the trial court's order granting summary judgment to the defendant.

Justice COATS concurs in the judgment only.

Justice COATS, concurring in the judgment only:

I agree with the judgment of the court because I believe that the plaintiff has failed to allege a compensable injury resulting from the breach of a duty owed her by the defendant.   I also agree with the court's decision not to reach the question whether Colorado permits recovery for commercial damages under either the rubric of privacy or publicity or whether a plaintiff must prove the value of her identity when she seeks commercial damages.   I would not, however, use a case that admittedly does not involve commission of the tort, as the vehicle to adopt for the jurisdiction a tort of invasion of privacy by appropriation of another's name or likeness, even to the extent that the majority does so. Similarly, I would not reach the question of a first amendment privilege in this case because I believe that use of the name and picture of the plaintiff under these circumstances simply does not implicate any value deserving of protection by a private action for damages.

Largely for reasons set out in the majority's explanation of the cause of action for appropriation of another's name or likeness, I do not consider it to be a natural outgrowth of our development of the right to privacy. Even when limited to the case of "personal," as distinguished from "commercial," damages, to the extent that the interest to be protected does not truly involve private matters or the so-called right "to be let alone," it is substantially different from other kinds of actions for invasion of privacy.   While I do not reject the notion, which I believe to be the essence of the Restatement's articulation of the tort, that the appropriation without permission of certain values associated with a person's name or likeness, like reputation, prestige, or standing in a particular community, should be protected against, it is clear to me that publication of a person's felony conviction record does not involve such a value.   I am concerned that by eliminating the need for appropriation of any such value altogether, and basing a cause of action on the mere "use" of a person's name or likeness, the majority creates an extremely broad duty, which then requires a concomitantly broad first-amendment privilege as a limitation.

At least where I do not consider it necessary to the resolution of the controversy before us, I would not decide a constitutional issue or abandon the caution with which we have approached adoption of the tort of invasion of privacy in the past.