MICHIGAN MUTUAL INSURANCE COMPANY v DOWELL

DOWELL v McKEEVER

Docket Nos. 145654, 145655. Submitted December 8, 1993, at Lansing. Decided March 7, 1994, at 9:45 A.M. Leave to appeal sought.

Jason Dowell brought an action in the Genesee Circuit Court against Paul McKeever, his half brother, and Emma Vallaire, seeking damages for injuries sustained in an automobile accident that occurred while McKeever was driving his own automobile, with Dowell as his passenger, and the automobile collided with one driven by Vallaire. McKeever's automobile was insured by Auto Club of Michigan. A separate automobile owned by Dowell was insured by Michigan Mutual Insurance Company, which denied coverage for McKeever and refused to defend him. A consent judgment for Dowell was entered by the court, Donald R. Freeman, J., in an amount reduced by sums paid by Vallaire's insurer and McKeever's insurer. The judgment provided, with regard to the remaining damages, that Dowell could only attempt to satisfy the consent judgment from Michigan Mutual, either as assignee of any of McKeever's claims or through a garnishment action. When a writ of garnishment was served on Michigan Mutual, it denied liability and brought a separate action in the circuit court seeking a declaratory judgment regarding its obligation to provide coverage for McKeever's liability to Dowell under Dowell's policy. Following hearings, the court, Donald R. Freeman, J., entered orders granting summary disposition for Michigan Mutual in the declaratory judgment action and releasing the writ of garnishment entered in the negligence act brought by Dowell. Dowell appealed from both orders. The appeals were consolidated.

The Court of Appeals *held*:

1. The trial court clearly erred in finding that Dowell and McKeever were not family members related by blood and living in the same household on the date of the accident.

2. The trial court erred in construing the word "use" in the exclusions in Michigan Mutual's insurance contract to mean that Dowell must be operating a vehicle in order to be entitled to coverage. The phrase "use of any vehicle" in the context of

the insurance provision considered in this case was not clear and unambiguous. The phrase reasonably can be interpreted to include the use of the vehicle as a passenger as well as use of the vehicle as an operator. Therefore, Dowell was using a vehicle owned by a family member when he occupied McKeever's vehicle as a passenger.

3. As a matter of law, the only reasonable interpretation of the exception to the exclusionary language in the policy precludes coverage of McKeever's liability to Dowell. The policy excludes coverage for any liability incurred by Dowell or McKeever arising from the ownership, maintenance, or use of any vehicle owned by McKeever.

4. The policy provides coverage for an insured's legal responsibility to pay damages to another for bodily injury or property damage. Coverage is not provided directly to an insured simply because the insured sustains an injury in an automobile accident. Dowell has not incurred any legal responsibility to another because of the accident. Therefore, the exception to the exclusion providing coverage in the event Dowell becomes legally responsible for damages while using McKeever's vehicle is inapplicable.

5. The Michigan Mutual policy does not require the insurer to pay damages for which McKeever becomes legally responsible through operation of his own vehicle. Michigan Mutual's policy does not provide coverage to Dowell under the facts of this case because he did not incur any liability as a result of his use of a vehicle owned by a family member.

Affirmed.

*Howard R. Grossman,* for Jason Dowell.

*Neal, Neal & Stewart* (by *Stephanie A. Neal*), for Michigan Mutual Insurance Company.

Before: TAYLOR, P.J., and REILLY and M. J. TALBOT,* JJ.

REILLY, J. These two consolidated cases involve a garnishment claim by Jason Dowell against his insurer, Michigan Mutual Insurance Company (MMIC), seeking coverage for injuries sustained in an automobile accident, and MMIC's claim for de-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

claratory judgment with respect to its obligation under its insurance contract with Dowell. The trial court granted summary disposition in favor of MMIC, MCR 2.116(I)(2), and discharged the garnishment. Dowell appeals as of right. We affirm.

The facts are not in dispute. On September 8, 1988, Paul McKeever was driving his own automobile, a 1981 Chevrolet Chevette, in Genesee County. McKeever's half brother, Dowell, was a passenger in the vehicle, and was seriously injured when it collided with an automobile operated by Emma Vallaire.

At the time of the accident, McKeever's automobile insurance carrier was Auto Club of Michigan. Dowell was covered by an automobile insurance policy issued by MMIC. The MMIC policy contained the following pertinent terms:

DEFINITIONS

A. Throughout this policy, "you" and "your" refer to:

1. The "named insured" shown in the Declarations [Jason Edward Dowell]; and

2. The spouse if a resident of the same household.

\* \* \*

F. "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household. . . .

\* \* \*

J. "Your covered auto" means: [Dowell's 1977 Chevrolet Chevette].

\* \* \*

PART A—LIABILITY COVERAGE

INSURING AGREEMENT

A. We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident. . . .

B. "Insured" as used in this Part means:

1. You or any "family member" for the owner-ship, maintenance or use of any auto or "trailer."

\* \* \*

EXCLUSIONS

\* \* \*

B. We do not provide Liability Coverage for the ownership, maintenance or use of:

\* \* \*

3. Any vehicle, other than "your covered auto," which is:

a. owned by any "family member."

\* \* \*

However, this exclusion (B.3.) does not apply to your maintenance or use of any vehicle which is:

a. owned by a "family member."

On February 8, 1990, Dowell filed a complaint in the Genesee Circuit Court against McKeever and Vallaire. A consent judgment in favor of Dowell in the amount of $170,000 was entered on September 4, 1990. According to that judgment, McKeever was given credit for $50,000 paid by Vallaire through her automobile insurance company, and $20,000 paid by McKeever's insurance company. With regard to the remaining damages in the amount of $100,000, the judgment provided:

"Plaintiff, Jason Dowell, shall only attempt to satisfy this Consent Judgment from Michigan Mutual Insurance Company, either as an assignee of any claims that Defendant, Paul McKeever, may have, or through a garnishment action against the said Michigan Mutual Insurance Company."

A writ of garnishment was served on MMIC, which denied liability to McKeever.

MMIC then filed a complaint in the Genesee Circuit Court against Dowell and McKeever, seek-

ing a declaratory judgment regarding MMIC's obligation to provide coverage for McKeever's liability to Dowell under Dowell's policy. Dowell moved for summary disposition in the declaratory judgment action. The trial court ruled that Dowell was not entitled to relief, because being a passenger in a motor vehicle does not constitute "use" of that vehicle under the terms of the parties' contract. An order granting summary disposition in favor of MMIC was entered in the declaratory judgment action on October 9, 1991. Also on that date, an order for release of garnishment liability was entered in the action brought by Dowell. Dowell appeals as of right from both orders. The appeals were consolidated by the Court of Appeals.

A motion for summary disposition may be granted pursuant to MCR 2.116(C)(10) when, except with regard to the amount of damages, there is no genuine issue of material fact and the moving party is entitled to judgment or partial summary judgment as a matter of law. *Featherly v Teledyne Industries, Inc,* 194 Mich App 352, 357; 486 NW2d 361 (1992). A motion for summary disposition under MCR 2.116(C)(10) tests whether there is factual support for a claim. The opponent must, by documentary evidence, set forth specific facts showing that there is a genuine issue for trial. *Amorello v Monsanto Corp,* 186 Mich App 324, 329-330; 463 NW2d 487 (1990). The trial court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence presented. *Id.* Giving the benefit of reasonable doubt to the nonmovant, the trial court must determine whether a record might be developed that would leave open an issue upon which reasonable minds might differ. *Featherly, supra.* If it appears to the court that the opposing party, rather than the moving party, is entitled to judgment, the court

may render judgment in favor of the opposing party. MCR 2.116(I)(2). If the affidavits or other proofs show that there is no genuine issue of material fact, the court shall render judgment without delay. MCR 2.116(I)(1).

On appeal, an order granting summary disposition is reviewed de novo. The record must be reviewed to determine whether the successful party was entitled to judgment as a matter of law. *Adkins v Thomas Solvent Co,* 440 Mich 293, 302; 487 NW2d 715 (1992).

Three issues are presented for review in these cases: (1) whether any issue of fact exists regarding the status of McKeever as a family member living in Dowell's household; (2) whether the trial court improperly construed the word "use" in MMIC's insurance contract to read that Dowell must be operating a vehicle in order to be entitled to coverage; and (3) whether the antistacking provisions of the policy would prohibit payments to Dowell under part A of the policy.

I

Having reviewed the deposition testimony and affidavits, we are convinced that there is no question of fact whether Dowell and his half brother, McKeever, were living in the same household at the time of the accident. McKeever testified in his deposition that he lived with his mother on the date of the accident, but was "not sure" if Dowell was living with McKeever and their mother at the time. A subsequent affidavit was submitted by McKeever in which he swore that both he and Dowell were living with their mother on September 8, 1988. Dowell and his father (McKeever's stepfather) also filed affidavits swearing that Dowell was living in his mother's home on September 8, 1988.

According to the testimony of Kathleen Mae Carpenter, the mother of both Dowell and McKeever, McKeever was living with her at the time of the September 8, 1988, accident. MMIC did not file any affidavits to the contrary. Because the undisputed facts show that Dowell and McKeever were "family members," related by blood and living in the same household on the date of the accident, the trial court's finding otherwise was clearly erroneous.

II

We also conclude that the trial court's interpretation of the word "use" in the exception to exclusion B(3) under part A—liability coverage to mean only "operation" was erroneous. The trial court determined that Dowell, a passenger in McKeever's automobile when the accident occurred, was not using the vehicle owned by McKeever because Dowell was not operating the vehicle. The court held, therefore, that MMIC could not be held responsible for any damages for injuries to Dowell for which McKeever might be responsible. Although we agree with the trial court's conclusion that Dowell is not entitled to recover damages from MMIC, we follow a different rationale.

An ambiguous provision in an insurance contract must be construed against the drafting insurer and in favor of the insured. However, if the provision is clear and unambiguous, the terms are to be taken and understood in their plain, ordinary, and popular sense. *Clevenger v Allstate Ins Co,* 443 Mich 646, 654; 505 NW2d 553 (1993). A contract is said to be ambiguous when its words may reasonably be understood in different ways. *Raska v Farm Bureau Mutual Ins Co of Michigan,* 412 Mich 355, 362; 314 NW2d 440 (1982). If a fair

reading of the entire contract of insurance leads one to understand that there is coverage under particular circumstances and another fair reading of it leads one to understand there is no coverage under the same circumstances, the contract is ambiguous and should be construed against its drafter and in favor of coverage. *Id.*

The phrase "use of any vehicle" in the context of the insurance provision considered here is not clear and unambiguous. Although the trial court determined to the contrary, we conclude that the phrase can reasonably be interpreted to include the use of the vehicle as a passenger as well as use of the vehicle as an operator.

The noun "use" is defined in *the Random House College Dictionary: Revised Edition* (1988) as meaning "the act of employing, using, or putting into service; the state of being employed or used; a way of being employed or used. The verb "use" is defined as "to employ for some purpose, put into service; make use of; to avail oneself of; apply to one's own purposes."

We note that personal protection benefits are afforded under § 3105 of the no-fault insurance law, MCL 500.3105(1); MSA 24.13105(1), "for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle." The term "use" in that provision is clearly distinguishable from the term "operation," and has been interpreted as having meaning independent of "controlling" or "operating" a vehicle. *Gooden v Transamerica Ins Corp of America,* 166 Mich App 793; 420 NW2d 877 (1988); *Harris v Grand Rapids Area Transit Authority,* 153 Mich App 829; 396 NW2d 554 (1986); *Koole v Michigan Mutual Ins Co,* 126 Mich App 483; 337 NW2d 369 (1983). See also, *Pappas v Central Na-*

*tional Ins Group of Omaha,* 400 Mich 475; 255 NW2d 629 (1977).

When Dowell was a passenger in McKeever's automobile, the vehicle was being employed by him for the purpose of transportation. Dowell was not controlling the operation of the vehicle by driving it, but he was obtaining benefit from his employment, or use, of it. He was availing himself of it for his own purpose. Consequently, we conclude that a reasonable interpretation of the word "use" in the context of the exception to exclusion B(3) includes the use of a vehicle for transportation by a passenger.

Numerous cases in other jurisdictions have considered the meaning of "use" of a vehicle and reached the same conclusion. See *Brown v Kennedy,* 49 NE2d 417, 418-419 (Ohio App, 1942), aff'd 141 Ohio St 457; 48 NE2d 857 (1943), which held:

> In the instant case the terms in question are "use" and "using." Now a car would be used by a person, whether it was operated personally or through the services of another. If the insurer meant that liability should only attach when it was being operated or driven by the owner or some one with his consent, and it is claimed the word 'used' includes the term "operated"—then the insurer should have employed the word carrying in its meaning the narrower limitation of liability.

See also *Francis-Newell v Prudential Ins Co of America,* 841 SW2d 812, 814-815 (Mo App, 1992); *Aetna Life & Casualty Co v Bulaong,* 218 Conn 51, 62-63; 588 A2d 138 (1991); *Sears v Grange Ins Ass'n,* 111 Wash 2d 636, 638-639; 762 P2d 1141 (1988); *Hite v Hartford Accident & Indemnity Co,* 288 SC App 616, 618-619; 344 SE2d 173 (1986). Construing the contract term "use" in the excep-

tion to exclusion B(3) in a manner favorable to the insured and against the drafter, MMIC, we conclude that Dowell was using a vehicle owned by a family member when he occupied the vehicle as a passenger.

III

Nevertheless, we conclude, as a matter of law, that the only reasonable interpretation of the exception to the exclusionary language of part A—liability coverage precludes coverage of McKeever's liability to Dowell. Under part A—liability coverage - insuring agreement, MMIC is obligated to pay "damages" only "for 'bodily injury'. . . for which any 'insured' becomes legally responsible because of an auto accident." Pursuant to that clause, MMIC is obligated to pay the damages for bodily injury for which an insured (Dowell or family member McKeever) becomes legally responsible because of an auto accident. By entering into the consent judgment, McKeever became legally responsible for damages attributable to Dowell's injuries sustained in the auto accident. Accordingly, construing only the insuring agreement of part A—liability coverage, it would appear that MMIC is obligated to pay any damages arising out of the September 1988 accident for which Mc-Keever is legally responsible.

However, exclusion B(3) provides that MMIC will not provide liability coverage to an insured for the ownership, maintenance, or use of any vehicle owned by a family member, other than Dowell's 1977 Chevrolet Chevette. Construing only the insuring agreement of part A—liability coverage with exclusion B(3) together, MMIC has excluded coverage for any liability incurred by Dowell or McKeever arising from the ownership, maintenance or use of any vehicle owned by McKeever.

However, the exception to exclusion B(3) provides that exclusion B(3) is not applicable to "your maintenance or use of any vehicle which is . . . owned by a family member." Construing the insuring agreement of part A—liability coverage with exclusion B(3) and the exception to exclusion B(3), it is clear that MMIC will provide liability coverage to Dowell when Dowell becomes legally responsible for damages as a result of his use of a vehicle owned by a family member.

Dowell contends that because he was using McKeever's vehicle as a passenger when the accident occurred, the exception applies and MMIC is responsible for McKeever's obligation to pay damages to Dowell. We disagree. Dowell's claim is based upon a misunderstanding of the purpose of the insuring agreement of part A—liability coverage, and the mistaken belief that the exception to exclusion B(3) takes effect whenever he is injured while using a vehicle, not his own, that is owned by a family member.

Dowell's interpretation ignores the clear language in Part A—liability coverage - insuring agreement that coverage is provided for an insured's legal responsibility to pay damages to another for bodily injury or property damage. Under the insuring agreement of part A—liability coverage, coverage is not provided directly to an insured simply because the insured sustains an injury in an automobile accident. Coverage is provided to an insured only when that insured incurs legal responsibility to another. Dowell has not incurred any legal responsibility to another because of the accident. Therefore, the exception to exclusion B(3), providing coverage in the event Dowell becomes legally responsible for damages while using McKeever's vehicle, is inapplicable.

We recognize that an ambiguity in policy lan-

guage must be construed against the drafting insurer if there are two reasonable interpretations that may be drawn from the ambiguous language. *Vanguard Ins Co v Clarke,* 438 Mich 463, 471-472; 475 NW2d 48 (1991). However, where there is no ambiguity, this Court will uphold the clear meaning of an insurance contract that does not violate public policy. *Id.*

We conclude that the only reasonable interpretation of exclusion B(3) to part A—liability coverage, is that the insurer will not pay damages for which McKeever becomes legally responsible, arising out of his operation of his own vehicle. Further, the only reasonable interpretation of the exception to exclusion B(3), is that MMIC would be obligated to provide coverage for any legal responsibility for damages that the insured, Dowell, may incur because of his maintenance or use (whether as operator or passenger) of a vehicle owned by a family member. In this case, considering the policy provisions together, MMIC would not be obligated to pay damages incurred by McKeever as a result of an accident that occurred while he was driving his own vehicle. Moreover, coverage would not be provided to Dowell because he did not incur any liability. Because reasonable persons could not reach any other interpretation of the contract language, even accepting Dowell's interpretation of the term "use," there was no ambiguity to be resolved. MMIC was entitled to a declaratory judgment in its favor, and dismissal of the garnishment action, as a matter of law.

IV

We do not address MMIC's counterissue regarding Dowell's entitlement to garnishment based on a consent judgment to which MMIC was not a

party, because MMIC did not cross appeal and, as conceded by MMIC, the trial court did not reach the issue. We also decline to review questions regarding the stacking of coverage or other provisions that might preclude payment of part A—liability coverage by MMIC under this policy because they were not addressed by the trial court. Further, both issues have been rendered moot by our ruling regarding the interpretation of exclusion B(3) and the exception to it.

Affirmed.