BATTAGLIERI v MACKINAC CENTER FOR PUBLIC POLICY

Docket No. 245862. Submitted February 5, 2004, at Lansing. Decided
    March 18, 2004, at 9:05 A.M.

Luigi Battaglieri and the Michigan Education Association (MEA)
    brought an action in the Ingham Circuit Court against the
    Mackinac Center for Public Policy, alleging invasion of privacy as
    a result of publicity that placed Battaglieri in a false light in the
    public eye and by appropriation of Battaglieri's name or likeness
    for the defendant's advantage. The action was based on a fund-
    raising letter sent by the defendant that quoted certain remarks
    that Battaglieri, the president of the MEA, made concerning the
    defendant during a press conference. The court, Peter D. Houk, J.,
    denied the defendant's motion for summary disposition. The
    defendant appealed by leave granted.

    The Court of Appeals *held*:

    1. An invasion of privacy cause of action for appropriation of a
    plaintiff's name or likeness is barred by the First Amendment
    where the use of the name or likeness in a publication concerns
    matters that are newsworthy or of legitimate public concern. The
    letter here concerned a matter of legitimate public concern.

    2. The plaintiffs, to avoid summary disposition with regard to
    the claim of false light invasion of privacy, had to come forward
    with sufficient evidence of actual malice by clear and convincing
    evidence. The plaintiffs failed to present such evidence. The court
    erred in denying the motion for summary disposition with regard
    to both claims advanced by the plaintiffs. The order of the court
    must be reversed and the matter must be remanded for entry of an
    order dismissing the plaintiffs' claims.

    Reversed and remanded.

1. TORTS — INVASION OF PRIVACY — APPROPRIATION OF PERSON'S NAME OR
    LIKENESS.

    The right protected by the tort of invasion of privacy by appropria-
    tion of a plaintiff's name or likeness is in the nature of a property
    right that is violated whenever the defendant makes use of the
    plaintiff's name or likeness for his own purposes and benefit; the
    plaintiff need not allege that a statement about the plaintiff was an

intrusion upon seclusion or private matters or that it was in any way false; any unauthorized use of the plaintiff's name or likeness, however inoffensive in itself, is actionable if that use results in a benefit to another; the First Amendment bars liability for such an appropriation where the publication concerns matters that are newsworthy or of legitimate public concern; whether the privilege applies depends on the character of the publication, and the defendant can be liable only if the use of the plaintiff's name or likeness was for a predominantly commercial purpose, for purposes of trade, without a redeeming public interest, news, or historical value.

2. TORTS — INVASION OF PRIVACY — FALSE LIGHT INVASION.

The gravamen of a claim of false light invasion of privacy is a publication by the defendant that attributed to the plaintiff characteristics, conduct, or beliefs that were false and placed the plaintiff in a false position; the First Amendment requires that, with regard to plaintiffs who are public figures, they must prove actual malice with clear and convincing evidence; the actual-malice test mandates a subjective inquiry concentrating on the knowledge of the defendant at the time of the publication.

*Arthur R. Przybylowicz* and *White, Schneider, Young & Chiodini, P.C.* (by *Jeffrey S. Donahue*), for the plaintiffs.

*Dykema Gossett, PLLC* (by *Christine Mason Soneral*), and *William H. Mellor, Clark M. Neily, III*, and *Steven M. Simpson*, for the defendant.

Before: SAWYER, P.J., and BANDSTRA and METER, JJ.

BANDSTRA, J. Defendant Mackinac Center for Public Policy (Mackinac) appeals by leave granted from the trial court's order denying its motion for summary disposition of plaintiffs' claims of invasion of privacy. Plaintiffs alleged that a publication by Mackinac gave rise to both "appropriation" and "false light" claims of invasion of privacy. We conclude that plaintiffs' appropriation claim must fail because Mackinac's publication was protected by the First Amendment because its

subject matter was a matter of legitimate public concern. We further conclude that the false light claim must fail because plaintiffs failed to produce sufficient evidence that Mackinac acted with actual malice. We reverse and remand for entry of an order dismissing plaintiffs' claims.

### BASIC FACTS AND PROCEEDINGS BELOW

Plaintiff Luigi Battaglieri is president of the Michigan Education Association (MEA), a union representing many Michigan teachers. Defendant Mackinac is a self-described "think tank," a research and advocacy group that oftentimes advances public policy positions adverse to those of the MEA on education issues.

On September 27, 2001, Battaglieri held a press conference to announce the establishment of a competing MEA think tank, the Great Lakes Center for Education Practice and Research (Great Lakes). During the press conference, Battaglieri characterized the opening of Great Lakes as "the MEA [taking] on . . . Mackinac Center" and discussed an analysis undertaken by Great Lakes that criticized research conducted by Mackinac on various education policy questions.

At issue here is a statement made by Battaglieri:

> And so, quite frankly, I admire what they've done over the past couple of years [,] entering into the field as they have, and pretty much being the sole provider of . . . research to the community . . . to the public, to our members, to legislators and so on.

Mackinac later used part of this remark in its "Freedom Fund" letter as follows:

> By all measures the Mackinac Center has had an outstanding year and the people of Michigan are the beneficiaries. But you don't need to take my word for it.

This fall Luigi Battaglieri, president of the Michigan Education Association, stated, "Frankly, I admire what the Mackinac Center has done." Mr. Battaglieri, whose union is generally at odds with the Mackinac Center, said this with respect to how Mackinac Center research has shaped education reform in Michigan and around the nation.

The Freedom Fund letter was mailed to about 20,000 addresses as part of Mackinac's annual year-end fundraising campaign.

As the above shows, Mackinac's publication did not misquote the portion of Battaglieri's comments that was included in the letter and plaintiffs do not so allege. Instead the complaint alleges that the Mackinac publication was an "invasion of privacy, misappropriation of another's name for commercial benefit" and that it was an "invasion of privacy—false light."

Following discovery, defendant moved for summary disposition of plaintiffs' claims pursuant to MCR 2.116(C)(8) and (10). The trial court denied the motion and defendant now appeals by leave granted.

STANDARD OF REVIEW

An order granting summary disposition is reviewed de novo on appeal. *Michigan Mut Ins Co v Dowell*, 204 Mich App 81, 86; 514 NW2d 185 (1994). A motion for summary disposition pursuant to MCR 2.116(C)(10) tests whether there is factual support for a claim. *Id.* at 85. The motion may be granted when, except with regard to the amount of damages, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* The court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence presented. *Id.* Giving the benefit of the doubt to the nonmoving party, the court must determine whether a record might be

developed that would leave open an issue on which reasonable minds might differ. *Id.*

The Michigan Supreme Court has recognized the right of privacy and that tort claims can be brought for invasions of that right under the two theories advanced by plaintiffs here. As noted in *Tobin v Civil Service Comm*, 416 Mich 661, 672; 331 NW2d 184 (1982):

> The common-law right of privacy is said to protect against four types of invasion of privacy.
>
> 1. Intrusion upon the plaintiff's seclusion or solitude, or into his private affairs.
>
> 2. Public disclosure of embarrassing private facts about the plaintiff.
>
> 3. *Publicity which places the plaintiff in a false light in the public eye.*
>
> 4. *Appropriation, for the defendant's advantage, of the plaintiff's name or likeness.* [Citations and quotation marks omitted; emphasis added.]

With respect to the fourth of these causes of action, Mackinac does not argue that its use of Battaglieri's name and statement in the Freedom Fund letter falls outside the purview of the appropriation tort. Instead, it contends that its use of Battaglieri's name and statement is protected under the First Amendment because the letter concerned a matter of legitimate public concern. We agree.

The invasion of privacy cause of action for appropriation is founded upon "the interest of the individual in the exclusive use of his own identity, in so far as it is represented by his name or likeness, and in so far as the use may be of benefit to him or to others." 3 Restate-

ment, Torts, 2d, § 652C, comment a. The right protected by the tort "is in the nature of a property right," *id.*, which the tort recognizes as being violated whenever "the defendant makes use of the plaintiff's name or likeness for his own purposes and benefit . . . ." *Id.*, comment b. Thus, in contrast to the other forms of invasion of privacy, there need be no allegation that a statement about a plaintiff was an intrusion upon seclusion or private matters or that it was in any way false. Instead, any unauthorized use of a plaintiff's name or likeness, however inoffensive in itself, is actionable if that use results in a benefit to another.

Perhaps because this theory of liability is so far-reaching, courts[1] that have recognized the appropriation tort have also uniformly held that the First Amendment bars appropriation liability for the use of a name or likeness in a publication that concerns matters that are newsworthy or of legitimate public concern. See, e.g., *Dickerson & Assoc, LLC v Dittmar*, 34 P3d 995, 1003 (Colo, 2001); *Haskell v Stauffer Communications, Inc*, 26 Kan App 2d 541, 545; 990 P2d 163 (1999); *Lane v Random House, Inc*, 985 F Supp 141, 146 (D DC, 1995). "If a communication is about a matter of public interest and there is a real relationship between the plaintiff and the subject matter of the publication, the matter is privileged." *Haskell, supra* at 545. The privilege exists because dissemination of information regarding matters of public concern is necessary for the maintenance of an informed public. *Pierson v News Group Publications, Inc*, 549 F Supp 635, 639 (SD Ga, 1982).

---

[1] Although there are Michigan precedents recognizing the appropriation theory of liability, none provides any guidance on how it is to be applied. Accordingly, we consult precedents from other jurisdictions that we find helpful.

Whether the privilege applies depends on the character of the publication. *Dickerson, supra.* A defendant can be "liable for the tort of misappropriation of likeness only if defendant's use of plaintiff's likeness was for a predominantly commercial purpose . . . . The use must be mainly for purposes of trade, without a redeeming public interest, news, or historical value." *Tellado v Time-Life Books, Inc,* 643 F Supp 904, 909-910 (D NJ, 1986). The question whether a publication is sufficiently a matter of public interest to be protected by the privilege is ordinarily decided by the court as a question of law. *Dickerson, supra; Tellado, supra* at 910; see also *Haskell, supra* at 546.

Having reviewed the Freedom Fund letter at issue here, we conclude that the privilege applies to protect Mackinac from liability for appropriating plaintiff's name and likeness. Clearly, the letter conveyed a great deal of information about public policy questions facing Michigan in education and other areas of general interest. Its reference to plaintiff and his statement was made in the context of that, to illustrate how well Mackinac has been doing in advocating for the policies it supports. Further, plaintiff Battaglieri's action in calling the press conference itself illustrates that the educational issues addressed in the letter were of public interest, so much so that the founding of a think tank to advocate a competing viewpoint on those issues was newsworthy.

We acknowledge that the Freedom Fund letter also had a "pecuniary" or "commercial" purpose to the extent that it was also a clear request for charitable contributions to support Mackinac's work. Nonetheless, a publication that has "commercial undertones" may still be protected if it concerns a legitimate matter of public concern. See, e.g., *Ault v Hustler Magazine,*

*Inc*, 860 F2d 877, 883 (CA 9, 1988).[2] "The cases uniformly apply a newsworthiness privilege to matters . . . even though they are published to make a profit." *Haskell, supra* at 545. A different approach "would preclude the publication of much news and other matters of legitimate public concern." *Dickerson, supra* at 1004.

In sum, the Freedom Fund letter did, as defendants argue, have a fundraising purpose. Nonetheless, the publication also attempted to educate its readers on a number of public policy issues. It further tried to convince its readers that Mackinac had the right answers to those policy questions and was effectively advocating for appropriate solutions. Accordingly, we conclude that the publication falls squarely within the protection of the First Amendment for discourse on matters of public interest. The trial court erred in failing to grant defendant summary disposition on the appropriation claim.

#### FALSE LIGHT INVASION OF PRIVACY

In the amended complaint, plaintiffs further alleged that the Mackinac letter constituted a false light invasion of privacy. In contrast to the appropriation cause of action discussed above, where falsity is not needed to state a claim, the gravamen of this tort is that a defendant's publication "attribut[ed] to the plaintiff characteristics, conduct, or beliefs that were false and

---

[2] We are aware that, to the extent *Ault* recognized First Amendment protection for statements of opinion, it has been effectively overruled by *Milkovich v Lorain Journal Co*, 497 US 1; 110 S Ct 2695; 111 L Ed 2d 1 (1990). However, the present case does not involve a statement of opinion, and nothing in *Milkovich* renders the proposition for which *Ault* is relied on here any less persuasive.

placed the plaintiff in a false position." *Duran v Detroit News, Inc*, 200 Mich App 622, 632; 504 NW2d 715 (1993).

Thus, this cause of action is similar to a defamation claim and, as with such a claim, the First Amendment requires that public-figure[3] plaintiffs must prove actual malice with clear and convincing evidence. *Ireland v Edwards*, 230 Mich App 607, 624; 584 NW2d 632 (1998).[4]

> "Actual malice is defined as knowledge that the published statement was false or as reckless disregard as to whether the statement was false or not. Reckless disregard for the truth is not established merely by showing that the statements were made with preconceived objectives or insufficient investigation. Furthermore, ill will, spite or even hatred, standing alone, do not amount to actual malice. 'Reckless disregard' is not measured by whether a reasonably prudent man would have published or would have investigated before publishing, but by whether the publisher in fact entertained serious doubts concerning the truth of the statements published." [*Id.* at 622, quoting *Grebner v Runyon*, 132 Mich App 327, 332-333; 347 NW2d 741 (1984) (citations omitted).]

Whether the evidence is sufficient to state an actual malice claim is a question of law. *Id.* We "must make an independent examination of the record to ensure against forbidden intrusions into the field of free expression . . . ." *Northland Wheels Roller Skating Ctr, Inc v Detroit Free Press, Inc*, 213 Mich App 317, 322; 539 NW2d 774 (1995). The doctrine of independent review " 'reflects an inherent distrust of allocating unlimited decisional power to juries in the First Amendment

---

[3] Plaintiffs do not argue that Battaglieri is not a public figure for the purpose of their false light claim.

[4] Because of the similarity between this false light invasion of privacy claim and a defamation claim, we consider and rely on precedents discussing the actual malice standard in both contexts.

context.' " *Rouch v Enquirer & News of Battle Creek (After Remand),* 440 Mich 238, 258; 487 NW2d 205 (1992), quoting *Locricchio v Evening News Ass'n,* 438 Mich 84, 114 n 20; 476 NW2d 112 (1991).

Plaintiffs' contention is that, while the statement made by Battaglieri at the press conference was not misquoted, its publication nonetheless presented him in a false light because a reader could reasonably draw the inference from it that he was endorsing the substance of Mackinac's policies, rather than just expressing respect for its advocacy of those policies. However, the actual malice test mandates a *subjective* inquiry concentrating on the knowledge of a defendant at the time of a publication. See *Harte-Hanks Communications, Inc v Connaughton,* 491 US 657, 688; 109 S Ct 2678; 105 L Ed 2d 562 (1989). Adoption of an objective standard that would concentrate on what readers' inferences " 'should have been foreseen' " by a defendant "would permit liability to be imposed not only for what was not said but also for what was not intended to be said." *Newton v Nat'l Broadcasting Co, Inc,* 930 F2d 662, 680, 681 (CA 9, 1990). In a case such as this, where the plaintiffs are claiming injury from an allegedly harmful implication arising from the defendant's article, plaintiffs "must show with clear and convincing evidence that the defendant[ ] intended or knew of the implications that the plaintiff is attempting to draw . . . ." *Saenz v Playboy Enterprises, Inc,* 841 F2d 1309, 1318 (CA 7, 1988). Further, that conclusion is refuted if only a "strained reading of the article itself" would yield the offensive interpretation that a plaintiff alleges. *Howard v Antilla,* 294 F3d 244, 254 (CA 1, 2002).

We have conducted the constitutionally required independent examination of the evidence presented here and conclude that, under the actual malice require-

ments imposed by the First Amendment, plaintiffs' complaint should have been dismissed as a matter of law. While the Freedom Fund letter might conceivably have allowed a reader to conclude that Battaglieri was endorsing Mackinac's education policies, rather than merely recognizing its effectiveness in lobbying for those policies, that would require a "strained reading" of the document. It is highly unlikely that the recipients of the letter would conclude that Battaglieri was suddenly supportive of Mackinac's positions notwithstanding the longstanding, well-known, and sharp differences of opinion between Mackinac and the MEA in the past. Further, the article itself belies such an interpretation by noting that Battaglieri's "union is generally at odds with the Mackinac Center . . . ." As noted earlier, it is necessary for plaintiffs to prove that defendant intended the offensive interpretation that they allege but, had defendant had such an intent, it seems highly unlikely that this would have been included.

Further, the Mackinac employees responsible for the publication directly testified at their depositions that they did not intend to have readers infer that Battaglieri was endorsing the substance of Mackinac's education policies. In response, plaintiffs note precedents reasoning that it would be rare for a defendant to admit actual malice, e.g., *Solano v Playgirl, Inc*, 292 F3d 1078, 1085 (CA 9, 2002), meaning that circumstantial evidence may be considered, e.g., *Eastwood v Nat'l Enquirer, Inc*, 123 F3d 1249, 1253 (CA 9, 1997). While that may well be the case, plaintiffs have simply come forward with no such circumstantial evidence that Mackinac intended or knew that its publication would be interpreted by its readers in the manner plaintiffs argue.[5]

---

[5] In their brief on appeal, plaintiffs argue that "the evidence of the Mackinac Center's consistent efforts to harm the MEA" suffices to allow

To avoid summary disposition, plaintiffs had to come forward with sufficient evidence to prove actual malice "by clear and convincing evidence . . . [which is] a 'heavy burden,' far in excess of the preponderance sufficient for most civil litigation." *Id.* at 1252 (citation omitted). The record reveals no such evidence here. The trial court erred in failing to dismiss plaintiffs' claim of false light invasion of privacy.[6]

We reverse and remand for entry of an order dismissing plaintiffs' claims. We do not retain jurisdiction.

---

this matter to go to a jury. However, as explained above, the actual malice standard has nothing to do with any generalized antipathy or longstanding hostility between a plaintiff and defendant; it concentrates instead on the defendant's subjective state of mind at the time of the specific publication at issue.

[6] In light of this conclusion, we need not address defendant's other arguments regarding plaintiffs' false light claim, i.e., that the statement made in the Freedom Fund letter was not actionable because it was not able to be proven false, see, e.g., *Ireland, supra* at 621-622, or sufficiently offensive, see, e.g., *Reed v Ponton*, 15 Mich App 423, 426; 166 NW2d 629 (1968). We express no opinion on the merits of those arguments.